In Equity.

DENNIS MCGUIRE *vs.* EDWARD P. MURRAY et als.

Penobscot.    Opinion September 23, 1910.

*Limitation of Actions.    Notes.    Fraudulent Conveyances.    Reconveyance.    Statute*
*of Frauds.    Estoppel.    Equitable Estoppel.    Specific Performance.    Part*
*Performance.    Revised Statutes, chapter 75, section 14.*

A witnessed note given in 1893 was not barred in 1905.

A note given by a testatrix was not barred by any special statute of limitations where the executor never gave notice of his appointment as required by statute.

One who has conveyed property to avoid anticipated claims cannot invoke the aid of equity to obtain a reconveyance.

An estate cannot defeat a note given by a testatrix for land conveyed to her by her daughter, though the testatrix knew the conveyance was intended to defeat claims that might arise against her daughter.

The statute which prohibits suit to charge one on a contract concerning land, unless it is in writing, applies only where he is charged upon the contract, and not to equities resulting from res gestae subsequent to and arising out of the contract; the ground being equitable fraud, not an antecedent fraud in entering into the contract, but a fraud inhering in the consequence of setting up the statute as a defense.

After having induced or knowingly permitted another to perform in part an agreement on the faith of its full performance by both parties and for which he could not well be compensated except by specific performance, one cannot insist that the agreement is void.

A daughter deeded land worth $5,000 to her mother to avoid prospective claims against her, which did not materialize, taking a note for $2,000 as the price.    The daughter and her husband remained in possession, paying the taxes, and the note was never paid.    Several years afterwards, and after the mother and daughter died, the note and deed were discovered, whereupon it was agreed by the husband and the mother's heirs, etc., that the note be canceled, which was done, and that the land be deeded to the husband.    *Held*, that equity will enforce a conveyance according to the agreement.

The statute of frauds having been enacted for the purpose of preventing frauds, should not be used fraudulently.

In equity. On report. Bill sustained. Decree according to opinion.

Bill in equity brought by the plaintiff against the defendant Edward P. Murray and ten others, praying the court to decree that the defendant Murray held the legal title to a certain dwelling house and lot in Bangor in trust for the plaintiff and to compel the defendants to convey the property to him free of all liens and incumbrances. The defendants answered, the evidence was taken out, and the cause was then reported to the Law Court for determination.

The material facts are stated in the opinion.

*Benning C. Additon, and Matthew Laughlin*, for plaintiffs.

*Fellows & Fellows, and Edward P. Murray*, for defendants.

SITTING: EMERY, C. J., WHITEHOUSE, PEABODY, CORNISH, KING, BIRD, JJ.

WHITEHOUSE, J. This bill in equity is brought to obtain from the court a decree that the defendant Murray holds the legal title to a certain dwelling house and lot in Bangor in trust for the plaintiff, and to compel the defendants to convey the property to him free of all liens and incumbrances. The case comes to the Law Court on report.

The material facts alleged and not denied and those satisfactorily established by the evidence, may be succinctly stated as follows:

On the 22nd day of February, 1893, Mary J. McGuire, wife of the plaintiff, being seized in fee of the house in question, valued at $5000, conveyed it to her mother Ellen Cassidy by a warranty deed in which the consideration was stated to be two thousand dollars, and received therefor a promissory note for $2000 signed by Mrs. Cassidy and witnessed by William Cassidy, her husband. At the date of this deed Mrs. McGuire, the grantee, had a suit for slander pending against one Largay, and this conveyance is said by one of the plaintiff's witnesses to have been made to "cover up the property" in anticipation of a possible cross action by Largay against Mrs. McGuire. No such cross action was ever brought, however, and there were no existing or subsequent creditors who were or could have been defrauded by this conveyance to Mrs. Cassidy.

Mrs. Cassidy, the grantee in this deed, died in the year 1902, leaving her husband William Cassidy surviving her, and as her heirs five children, namely, Mary J. McGuire, wife of the plaintiff, and William J. Cassidy, Ellen C. Buckley, Annie M. Crane and Margaret E. Welch.   She left a will by the terms of which, after disposing of certain specific items of real estate, she devised and bequeathed all of the residue of her estate, real and personal to her husband, William Cassidy, in trust for the purposes therein specified, during the lifetime of her husband William Cassidy, and provided that at his death the trust should cease and that the entire residue and remainder of the estate, with the exception of three parcels of real estate otherwise disposed of, should be divided equally among her children William J., Annie, Margaret and Ellen if living.   As a result of these testamentary provisions, the defendant William Cassidy, took the legal title to the McGuire premises in question and the heirs above named took only contingent remainders, although the will makes no specific mention of this particular piece of real estate.

In the year 1903, the year following the death of Mrs. Cassidy, Mary J. McGuire the wife of the plaintiff, and the grantor in the deed in question, died testate, and by the terms of her will, her husband who was made executor, succeeded to all of the rights of the testatrix in the homestead in question.   Nearly two years after the death of his wife the plaintiff found among her papers the promissory note for $2000 in question signed by Ellen Cassidy and given to Mrs. McGuire by Mrs. Cassidy at the time of the conveyance of the property to her.   As a result of the investigations which followed the discovery of this note, the plaintiff ascertained for the first time that the legal title to the homestead, which he and his wife had occupied and controlled and upon which they had paid the taxes as absolute owners, without interruption or change during all these years, had been conveyed to his wife's mother in 1893 and by operation of the provisions of her will transferred to the defendants. Neither did the defendant William Cassidy have any knowledge of the transaction until the deed of 1893 was found on record as a result of the examination following the discovery by the plaintiff

of the $2000 note. This note which then amounted to $3440 was a legal claim against the estate of Ellen Cassidy, which was estimated to have a value of at least $20,000. The note was not barred by the general statute of limitations, because it was a witnessed note, and it was not barred by any special statute for the reason that William Cassidy, executor of the will of Ellen Cassidy never gave the notice of his appointment required by the statute. It may be conceded that Mrs. McGuire's conveyance of the property in 1893 was for the purpose of avoiding anticipated claims against her, and that she could not invoke the aid of a court of equity to obtain a reconveyance. But none of the defendants invoked this principle in the conferences between the parties immediately after the discovery of the deed and note, or made any claim to hold title to the property by virtue of that conveyance,—certainly not without payment of the note for $2000 and interest, held by the plaintiff against the estate of Mrs. Cassidy. On the contrary it was known that at the time of the execution of her will Mrs. Ellen Cassidy had expressly stated to the scrivener that this property in question belonged to her daughter Mrs. McGuire. It was thereupon mutually agreed between the plaintiff on the one side and William Cassidy who was then trustee under the will of Ellen Cassidy, and the heirs of Ellen Cassidy named as defendants being all parties in interest, that the plaintiff should surrender the note for $2000 then amounting to $3440, to the representatives of the estate of Ellen Cassidy, and in consideration thereof that the trustee William Cassidy and the heirs of Ellen Cassidy should convey the legal title to the real estate in question to the plaintiff Dennis McGuire. The defendants above named thus promptly and voluntarily recognized the existence of an oral trust in favor of Mrs. McGuire. In execution of the mutual agreement above stated, the plaintiff on May 8, 1905, surrendered the $2000 note and it bears upon its face this memorandum signed by the attorney who delivered the note to Mr. Cassidy: "Settled by reconveyance of the property for which this note was given." William Cassidy and the heirs of Ellen Cassidy gave the plaintiff quitclaim deeds of their respective interests in the property. The

plaintiff also signed and delivered to the defendant William Cassidy, a memorandum of that date stating that these two transactions were in full settlement of all matters between the two estates.

It is not now questioned that in Ellen Cassidy's will the terms of the devise of her real estate to her husband William Cassidy as trustee, were sufficiently comprehensive to include the McGuire lot in question; but it is manifest from the form of the quitclaim deed to the plaintiff of May 8, 1905, in which William Cassidy is described as "widower" considered in connection with all the other facts and circumstances, that the parties in interest understood that by the terms of Ellen Cassidy's will, her children took vested interests in the real estate in question and that the quitclaim deeds in one of which William Cassidy joined as "widower" would have the effect to vest in the plaintiff the same full title in fee simple to the property which Mrs. McGuire conveyed to Ellen Cassidy by her conveyance of 1893. It is perfectly obvious, however, that in making that settlement completed May 8, 1905, all of the parties were acting under an entire misapprehension in regard to the state of the title and the effect of the conveyances then made to the plaintiff. It is not now in controversy that by the provisions of Ellen Cassidy's will the legal title to the McGuire property in question was vested in William Cassidy, the trustee named in the will, and that under the residuary clause of the will, the children took only contingent remainders which could not be conveyed by them either by quitclaim or warranty deeds. See *Robinson* v. *Palmer*, 90 Maine, 246. And by the terms of the will creating a trust the trustee was authorized to sell and convey only unimproved lots.

William Cassidy resigned as trustee in 1905, and William B. Pierce was appointed in his place. Pierce resigned in 1908, and the defendant Edward P. Murray is his successor. It is accordingly not questioned that the legal title to this property is now vested in the defendant Edward P. Murray.

It is provided by section 14 of chapter 75, R. S., that "there can be no trusts concerning lands, except trusts arising or resulting by implication of law, unless created or declared by some writing signed

by the party or his attorney." The oral evidence in this case fails
to establish any fact from which a trust might arise by implication
of law, such as the payment of the consideration by one for land
conveyed to another, and in the absence of fraud or grounds for an
equitable estoppel, the admission of oral evidence to prove any
declaration of trust would be in direct contravention of the express
provisions of the statute. *Wentworth* v. *Shibles*, 89 Maine, 170.
Inasmuch, therefore, as the trust alleged to have resulted from the
original conveyance by Mrs. McGuire to Mrs. Cassidy in 1893 is
not manifested or proved by any writing signed by Mrs. Cassidy, it
is not contended that it is a trust which can be recognized or
enforced in a court of equity. The plaintiff is not seeking to enforce
an oral trust arising from the original transaction. But he confi-
dently insists that the oral agreement and settlement consummated
on the 8th of May, 1905, afford a sufficient and complete basis for
equitable relief, either upon the ground of a part performance of
the agreement by the plaintiff in the faith of its full performance by
both parties or, independently of the doctrine or part performance,
upon the general principle that relief in equity will be granted when
the defendant has been guilty of fraud which induced the plaintiff
to change his position irretrievably for the worse.

At the time the $2000 note was surrendered to William Cassidy,
executor and trustee, it was undoubtedly a valid subsisting claim
against the estate of Ellen Cassidy, to the amount of more than
$3400. The note was signed by Ellen Cassidy by "her mark" and
the name of William Cassidy appears on the note as an attesting
witness. All the parties in interest had full opportunity to examine
this note during the conferences connected with the agreement for
the settlement which continued from June, 1904, to May, 1905, and
William Cassidy never at any time before the commencement of this
cause, questioned either the genuineness of his own signature or the
validity of the note, but willingly joined in the agreement, as he
expressed it, "to give McGuire the place and take up that note."
But for the apparent purpose of proving that it was not a witnessed
note and therefore barred by the statute of limitations at the time of
the settlement, he testified as a witness in this cause that his name

written on the note was a "very good forgery" but not his signature, and that he never had any knowledge of the note whatever until it was presented at the time he saw the deed. The conclusion is irresistible, however, that this testimony is so discredited by the overwhelming evidence to the contrary as well as by the conclusive significance of his own conduct during the year following the discovery of the note at the time of the settlement, that it must be rejected as a reckless and flagrant disregard of the truth. The note was a genuine and valid promissory note and a legally enforceable claim against the estate of Ellen Cassidy. Even though given by Mrs. Cassidy as the consideration for a conveyance from Mrs. McGuire to defeat any subsequent claims that might possibly arise against her, such a fraudulent purpose, though known to the grantee, cannot be set up in defense to an action on the note. *Butler* v. *Moore*, 73 Maine, 151 ; *Dyer* v. *Homer*, 22 Pick. 253 ; *Harvey* v. *Varney*, 98 Mass. 118.

It also satisfactorily appears that neither William Cassidy nor any of his children ever asserted a right or expressed any purpose to hold the property on the ground that the original conveyance was in fraud of creditors, but upon discovery of the note and deed they all joined in the agreement to convey the property to McGuire in consideration of his surrendering the note to the executor of the estate. That such an oral agreement was made is established beyond question. It is sufficiently alleged in the bill, distinctly supported by all of the direct testimony in the case, not denied by Mr. Cassidy himself and absolutely and decisively confirmed by the deeds given in attempting to effect the settlement.

The plaintiff performed his part of the contract by surrendering the note and acknowledging in the memorandum that it was "settled by a reconveyance of the property." No action at law can now be maintained upon the note thus surrendered and canceled. The plaintiff continued in the possession of the house, exercising dominion and control over it, paying the taxes and making repairs upon it, in the confident belief that he was the lawful owner of the property.

At the time of the execution of these deeds to the plaintiff, the defendants undoubtedly believed that they had performed the agree-

ment on their part to "give the place to McGuire" upon the surrender of the note to the executor. But after discovery that the legal title to the property still remained in the trustee under the will of Ellen Cassidy, they seek to repudiate the settlement, insist that the trustee shall continue to hold this real estate and the $3400 due on the note, of the payment of which the estate has been relieved, and the defendants now refuse their consent for the court to authorize and direct the trustee to convey the property to the plaintiff according to the true intent and purpose of the agreement. The plaintiff has thus lost house and note and has been led to change his position irretrievably for the worse, and adequate relief can only be afforded by a specific performance of the contract by the defendants.

With respect to the specific performance of such oral contracts on the ground of part performance, it is said in *Madison* v. *Alderson,* L. R., 8 App. Cas. 467, that when the statute says no action is to be brought to charge any person upon a contract concerning land unless it is in writing, "it has in view the single case in which he is charged upon the contract only and not that in which there are equities resulting from res gestae subsequent to and arising out of the contract." And in 4 Pom. Eq. Jur. sec. 1409, the author says : "The ground is equitable fraud; not an antecedent fraud in entering into the contract, but a fraud inhering in the consequence of setting up the statute as a defense." So in *Woodbury* v. *Gardner,* 77 Maine, 68, it was held that a parol agreement for the conveyance of land should be enforced in behalf of the vendee whose partial performance has been such that fraud would result to him unless the vendor were compelled to perform on his part. In the opinion the court said : "The ground of the remedy is equitable estoppel based on an equitable fraud. After having induced or knowingly permitted another to perform in part an agreement on the faith of its full performance by both parties and for which he could not well be compensated except by specific performance, the other shall not insist that the agreement is void. . . . In other words, the statute of frauds having been enacted for the purpose of preventing frauds, should not be used fraudulently."

See also *Green* v. *Jones*, 76 Maine, 563, and *Goodwin* v. *Smith*, 89 Maine, 506. In *Low* v. *Low*, 173 Mass. 580, the law is thus stated : "The provisions of the Statute of Frauds are not a bar to the relief sought, because the refusal to complete the transfer of title is in the nature of a fraud and the defendants are estopped to set up the Statute of Frauds in defense."

Again in Pomeroy's Equity Jurisprudence, Vol. 6, (Eq. Rem. Vol. 2,) section 830, the author says : "Independently of the doctrine of part performance, relief may be granted when the defendant has been guilty of fraud which leads to an irretrievable change of position."

In the case at bar the refusal of the defendant to complete the transfer of title to the plaintiff according to the manifest purpose of the agreement, is an equitable fraud upon him. By the plainest principles of justice and conceptions of common right he is entitled to relief from the consequences of that fraud, and the court is not prohibited by any reason or authority from granting such relief, but on the contrary is warranted in so doing by the established principles of equity jurisprudence.

It is accordingly the opinion of the court that the plaintiff is entitled to a decree authorizing and directing the defendant Edward P. Murray in his capacity as trustee, to convey to the plaintiff by quitclaim deed with the usual covenants, all the right, title and interest in the real estate in question which he holds as trustee under the will of Ellen Cassidy.

*Bill sustained with costs.*
*Decree in accordance with opinion.*