RENA LAGRANGE *vs.* COSTAS DATSIS.

Kennebec.      Opinion, March 9, 1946.

*Jerome G. Daviau*, for plaintiff.

*Perkins, Weeks & Hutchins*, for defendant.

SITTING: STURGIS, C. J., THAXTER, MANSER, MURCHIE, TOMPKINS, JJ.

MANSER, J. Through the aid of equity, the plaintiff seeks to restrain the defendant from conducting a business on Temple Street in Waterville, similar in character to that conducted by her on Front Street in Waterville. From a decree dismissing the bill, the case comes forward upon appeal.

Some issues, raised by the pleadings and agreed statement, have been eliminated by stipulation of the parties, and the issues presented to the presiding justice for determination and now before us on appeal, are based upon facts which may be summarized as follows:

Costas and Stefanos Datsis owned a building located on property of the City of Waterville. The lot was leased by the city to these men. The business conducted by them was colloquially known as a "hot dog" stand where various foods, ice cream and soft drinks, were sold. On June 2, 1943, Costas Datsis, the defendant, and his brother Stefanos, gave a bill of sale to the plaintiff of

"The hot dog stand and all equipment as now operated by us on Front Street in said Waterville, to wit:

"Frame building with all appurtenances and fixtures, all equipment, appliances, utensils and dishes and all other furnishing together with stock of goods as of the closing hour of June 5, 1943."

Excepted only was an ice cream cooler which belonged to the manufacturer. The sale price was $2,500. The instrument contained the usual covenants of title and warranty. It appears that the lease of the lot given by the city to the vendors was terminated by mutual consent. A new lease was executed between the city and the plaintiff on June 5, 1943. There were no other written documents or memoranda between the parties. There was no written agreement restraining the right of the vendors or either of them to re-engage in the same or a similar business, either in Waterville or elsewhere. There was no mention of the "good will" as being sold. More than a year after the sale of the business to the plaintiff, the defendant obtained a license from the City of Waterville to carry on the same kind of business on Temple Street. In his findings of fact, the presiding justice set forth that the two establishments, one on Front Street and the other on Temple Street, were some 400 feet away from each other on streets that ran at right angles; that the defendant's stand was not in sight of the plaintiff's, nor was there any way to go from one to the other except by the streets and sidewalks.

As to the legal principles involved, the presiding justice assumed that, in the voluntary sale of an ordinary going business to the plaintiff, the good will thereof was impliedly included. The effect of this is not actually urged in this Court by the plaintiff as a ground for relief. It would not have availed the plaintiff to do so, as the conveyance of the intangible element known as good will does not of itself debar the vendor from engaging in a similar business. *VonBremen* v. *MacMonnies*, 200 N. Y., 41, 93 N. E., 186; *Reardon Laundry* v. *Reardon*, 97 N. J., Eq. 356, 128 A., 482.

Again, under the provisions in the bill of sale, the only written document evidencing the contract of the parties, the plaintiff would not be entitled to equitable relief because of the fact that one of the vendors, a year or more thereafter, engaged in a similar business in the same city. 82 A. L. R. 1030 (Annotation); Williston on Contracts, Rev. Ed., Vol. 5, §1640.

It further appears that the defendant advertised the opening of his new place of business in a local newspaper on August 22, 1944, in which appeared the statement, "Old and new customers welcomed." It is not claimed that this form of solicitation was ever repeated. The plaintiff might have been entitled to relief restraining the defendant from continued solicitation of this character, as indicated in cases cited immediately *supra*, because violative of his transfer of the good will of the old establishment, but no relief is sought on this ground.

The whole case for the plaintiff necessarily rests upon an oral statement made by the defendant, which appears in the agreed statement of facts, that

"Prior to the sale, the Defendant stated, as a reason for selling, that he was retiring from business."

It is not necessary to discuss the rules generally appertaining to the admissibility of testimony relating to oral statements made by either of the parties preliminary to the execution of a written contract, but not included therein, for the parties have deliberately made the foregoing statement of the defendant a part of the case for consideration upon its merits.

It is the contention of the plaintiff that this statement constituted a promissory estoppel, at least to the extent of preventing the defendant from engaging in the same kind of business within a reasonable area.

Our Court has affirmed the general principle that estoppels in pais have long been regarded as wise and salutary. *Caswell* v. *Fuller*, 77 Me., 105; *Milliken* v. *Dockray*, 80 Me., 82, 13 A., 127, and cases there cited.

As to whether such estoppel was created, the holding of the Court is necessarily limited to the facts actually before it for adjudication. The plaintiff has cited, and we adopt the excellent definition given in Pomeroy's Equity Jurisprudence, 5th ed., Vol. 3, p. 213:

"The doctrine of promissory estoppel is most widely recognized and most frequently applied in cases of promises or representation as to an intended abandonment of existing rights. Where a representation or assurance as to the future relates to an intended abandonment of an existing right and is made to influence another and the latter has been influenced thereby to act, it operates as an estoppel."

There is both elaboration and limitation to the foregoing definition found in *Insurance Co.* v. *Mowry*, 96 U. S., 544, 24 L., ed., 674, as follows:

"The only case in which a representation as to the future can be held to operate as an estoppel is where it relates to an intended abandonment of an existing right, and is made to influence others, and by which they have been induced to act. An estoppel cannot arise from a promise as to future action with respect to a right to be acquired upon an agreement not yet made."

"The doctrine of estoppel is applied with respect to representations of a party, to prevent their operating as a fraud upon one who has been led to rely upon them. They would have that effect, if a party who, by his statements as to matters of fact, or as to his intended abandonment of existing rights, has designedly induced another to change his conduct or alter his condition in reliance upon them, could be permitted to deny the truth of his statements, or enforce his rights against his declared intention of abandonment. But the doctrine has no place for application when the statement relates to rights depending upon contracts yet to be made,

to which the person complaining is to be a party. He has it in his power in such cases to guard in advance against any consequences of a subsequent change of intention and conduct by the person with whom he is dealing."

In the record before us there was no testimony of witnesses and there is no amplification of the single statement here re-quoted:

"Prior to the sale, the Defendant stated, as a reason for selling, that he was retiring from business."

Such a bare statement fails to fulfill the requirements of a promissory estoppel. So far as appears, it was made at some time before the actual contract of sale was consummated. It was not contemporaneous. It is spoken of as a statement, not a promise, representation or inducement designed to influence the plaintiff to purchase the business. Except for allegation in the bill, the record is barren of any claim by the plaintiff that she relied upon this statement as an abandonment by the defendant of an existing right with reference to a contract not then made. By its terms the words are consonant with a mere statement of present intention. There was no express guaranty on the part of the defendant that he would never resume business at any time.

The elements of a promissory estoppel, which would be in derogation of the rights of the defendant under the written contract, are not susceptible of proof by implication. The connotation of the word "retirement" is not necessarily tantamount to a final abandonment.

The doctrine of equitable estoppel is to be applied with great care. The equity must be strong and the proof clear. *Rogers* v. *St. Ry.*, 100 Me., 86, 60 A., 713; *Hooper* v. *Bail*, 133 Me., 412, 179 A., 404; *Box Machine Makers* v. *Wirebounds Patents Co.*, 131 Me., 70, 159 A., 496. The ruling below was correct.

*Appeal dismissed.*
*Decree below affirmed.*