JACOB H. BERMAN, ET AL.
ASSIGNEES
*vs.*
CLIFTON T. GRIGGS, ET AL.

Cumberland.   Opinion, August 4, 1950.

*Berman, Berman & Wernick,*
*George H. Hunt,*
*Raymond S. Oakes,* for plaintiffs.

*Albert Knudsen,* for defendants Griggs and Christianson.
*Jacob Agger, Pro Se.*

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

NULTY, J.  This case comes before this court on appeal from the decree of the sitting justice dismissing the bill in equity filed by the plaintiffs as assignees of a Maine corporation known as Associated Builders & Construction Co. The defendants, Clifton T. Griggs and Paul M. Christianson, were in reality the sole active owners of the company, the other defendant, Jacob Agger, an attorney, being joined as party defendant because of the facts which will subsequently appear.

The company found itself, in July, 1948, somewhat embarrassed by financial troubles, and, on August 10, 1948, a letter, prepared under the direction of defendant Agger as attorney for the company, was signed by said Agger and mailed to the creditors of the company asking them to be present or be represented at a meeting of creditors of the company to be held at the office of the company on August 13, 1948.  The record discloses that a large proportion of the creditors either attended the meeting in person or were represented by attorneys and the business situation of the company was discussed at considerable length.  Various procedures were considered and a creditors' committee was suggested.  It developed that the warehouse which was the

office of the company and which was a valuable piece of property had been deeded by the company on June 22, 1948, to defendants Griggs and Christianson. The corporate records of the company do not disclose any official acts of the board of directors or stockholders with respect to this conveyance and at the creditors' meeting more or less discussion ensued with respect to the defendants Griggs and Christianson reconveying the property to the company in order that it might be considered an asset of the company and be reflected in the financial statements for the benefit of the creditors. A creditors' committee was tentatively named at said meeting held August 13, 1948, and the record discloses that after said meeting of August 13, 1948, defendant Agger addressed another letter to all creditors in which he reported to them the results of said creditors' meeting, and, in addition to giving said creditors considerable information with respect to the company's financial affairs, enclosed in said letter a formal assent for all creditors to sign and asked that the creditors give their formal assent to allow a creditors' committee to operate the business. In said letter which was prepared and signed by said Agger the following statements were made:

"After a lengthy discussion as to what would be best for the creditors and the corporation the officers of the corporation, namely Paul Christianson and Clifton T. Griggs, were asked what they would do to assist the financial structure. Both Mr. Griggs and Mr. Christianson, who are the owners of the warehouse and which represents an actual outlay to them within the past few months of $10,000.00, agreed to convey the property to the corporation as additional assets. They further agreed to reduce their own salaries to a bare minimum.

"There is approximately $18,000 in completed contracts which were to have been refinanced through a local bank, but because of complications which had arisen in the past six or seven weeks the paper was not acceptable to the banks but those

contracts can now be financed through the Shawmut Bank, and a representative of the Shawmut Bank, who was present at the meeting, stated that his Bank would accept this paper if all of the creditors agree to go along with a creditors committee, otherwise they would not be interested in discounting the contracts.

"The creditors present, representing approximately $50,000.00 of the total $61,000.00 of liabilities, agreed that if a creditors committee was appointed for the benefit of the creditors and the corporation, they would not press their claims and were willing to allow the corporation to continue in business. Several of the creditors present who had attachments and trustees agreed to dismiss and discharge their attachment or trustee."

From the record it appears that as a result of the letter and the work of the creditors' committee practically all the creditors agreed to permit the company to continue its operations under the guidance of the creditors' committee and that those creditors who had attachments agreed to discharge and did subsequently discharge said attachments which had been hampering the company's business.

Another meeting of the creditors' committee was held on August 24, 1948, which was about the time that the creditors' committee really began to function, and at this meeting it developed that a deed of the property in question had been drawn and was subsequently executed by defendants Griggs and Christianson and their wives and delivered to defendant Agger, who was also a member of the committee and secretary thereof.

It appears to be unnecessary from the view we take of this matter to go further into the facts of the case other than to say that sometime later it was discovered by certain members of the creditors' committee that the deed in question had not been delivered and recorded although all attachments against the company's property had been released and the creditors' committee was functioning, having made

arrangements for bank financing. The failure to deliver and record the deed necessitated some changes in the company's financing due to the fact that the bank financing was withdrawn because of the failure to deliver and record the deed to the corporation, and, finally, on October 28, 1948, the company made an assignment for the benefit of creditors to the plaintiffs in this action and the present action was instituted by the assignees to compel defendants Griggs and Christianson or Agger, who was admittedly their attorney, to deliver and record the deed of the property to the company so that it would become a part of the assets for the benefit of creditors.

This court has said many times that equity appeals are heard anew on the record. See *Cassidy et al* v. *Murray et al.*, 144 Me. 326, and cases cited. We said in *Sears, Roebuck & Co.* v. *City of Portland,* 144 Me. 250, 68 A. (2nd) 12, 16 (speaking of findings of fact) :

> "This rule does not mean that the findings of fact of the justice below will not be reversed on appeal unless such findings constitute error in law. They may be disregarded on an appeal when clearly wrong."

It appears from the record that defendant Agger, under whose direction the information with respect to the proposed reconveyance of the real estate referred to above was communicated to the creditors, was admittedly the attorney not only of the corporation but of the two defendants, Griggs and Christianson, and it very frequently happens when an attorney acts within the scope of his authority, the principal is estopped from repudiating such acts as his attorney, clothed with authority, may have taken. *Burgess* v. *Stevens*, 76 Me. 559, 562. This court said in *Beale* v. *Swasey,* 106 Me. 35, 37, 75 A. 134:

> "An Attorney, within the scope of his authority, represents his client. His acts of omission as well as commission are to be regarded as the acts of the

party he represents. The neglect of the Attorney is equivalent to the neglect of the party himself."

Other cases hold that the authority of an agent, irrespective of actual relation, comprises not what is expressly conferred but also as to third persons what he is held out as possessing. *Packard* v. *Fire Insurance Co.*, 77 Me. 144, 150. In the instant case defendant Agger sent to the creditors, who subsequently acted upon the information, the information with respect to the reconveyance of the real estate herein mentioned. It is apparent from the record that defendant Agger, as above stated, was not only attorney for the defendants but also for the corporation, and, under the circumstances in this case, there is no material difference between his capacity as attorney or his capacity as agent, and, in our opinion, the law relating to principal and agent applies. We said in *Frye* v. *E. I. duPont deNemours & Company*, 129 Me. 289, 296, 151 A. 537, with respect to the liability of principals and the authority of agents the following:

> "It is well settled that the liability of a principal is not limited to such acts of the agent as are expressly authorized or necessarily implied from express authority. All such acts of an agent as are within the apparent scope of the authority conferred upon him are binding upon the principal, apparent authority being that which, though not actually granted, the principal knowingly permits the agent to exercise or holds him out as possessing. And whether or not a principal is bound by the acts of his agent when dealing with a third person, who does not know the extent of the agent's authority, depends not so much upon the actual authority given or intended to be given by the principal as upon the question, what did such third person, dealing with the agent, believe and have a right to believe as to the agent's authority from the acts of the principal. When a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence conversant with business uses and the nature of the par-

ticular business, is justified in assuming that such agent is authorized to perform in behalf of his principal the particular act in question, and such particular act has been performed, the principal is estopped to deny the agent's authority to perform it, *Feingold* v. *Supevitz,* 117 Me., 371; *Davies* v. *Steamboat Co.,* 94 Me., 379, 385; *Heath* v. *Stoddard,* 91 Me., 499; 21 R. C. L., 856, 907; 2 C. J., 461. This doctrine is established to prevent fraud and proceeds upon the ground that, when one of two innocent persons must suffer from the act of a third, he is to sustain the loss who has enabled the third person to do the injury. *Packard* v. *Insurance Co.,* 77 Me., 144; *Thorne* V. *Casualty Co.,* 106 Me. 274, 281."

The plaintiffs assert that the defendants are estopped by their conduct in this case and it is our opinion that their assertion is correct.

Estoppel has been many times defined by our court. In general it arises "When one by his words or conduct, wilfully causes another to believe the existence of a certain state of facts, and induces him to act on that belief, so as to alter his previous position, or to omit to assert some right which he otherwise would have asserted, he shall not afterwards be permitted to set up a different state of facts to the injury of him thus deceived." *Allen et al.* v. *Goodnow et al.,* 71 Me. 425. In *Holt* v. *New England Tel. & Tel Co.,* 110 Me. 10, 12, 85 A. 159, we said:

"Estoppel is a rule of law which prevents a party from asserting his rights when he has so conducted himself that it would be contrary to equity and good conscience for him to allege and prove the truth. His conduct need not be characterized by an actual intent to mislead or to deceive. His acts, declarations, or silence must be of such a character as to have the natural effect of influencing the person to whom it is addressed to do, or not to do to his detriment, what he would not otherwise have done. ----- Estoppel is a question of law."

Applying these familiar principles of law to the conduct and acts of defendant Agger, acting as attorney and agent for defendants Griggs and Christianson, it becomes apparent that proper consideration was not given to the relationship of the defendants, it being the opinion of this court that the plaintiffs in this action, acting for the creditors, had a right to rely upon the representations of the defendants as communicated to the creditors in writing and that the only proper conclusion that can be made is that the defendants placed themselves in such a position with respect to the creditors that they are now estopped to deny such representations. Equity and justice must be done. It, therefore, follows that the appeal of the plaintiffs must be sustained and the action remanded to the sitting justice in order that a decree be made ordering defendants Griggs, Christianson and Agger to deliver and record the deed to the company of the warehouse property referred to herein so that it will be available for the benefit of the creditors of the company. The mandate will be

> *Appeal sustained. Case remanded to the Sitting Justice with directions to enter a final decree in accordance with this opinion.*