John W. CHAPMAN, Jr. and Margaret Chapman and Chapman-Hall Realty

v.

George A. BOMANN, III.

Supreme Judicial Court of Maine.

Jan. 24, 1978.

Westcott & Lynch, P. A. by John J. Lynch, Damariscotta (orally), for John and Margaret Chapman.

. Clayton N. Howard, Damariscotta (orally), for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

WERNICK, Justice.

On September 13, 1974 John W. Chapman, Jr., his wife Margaret Chapman and Chapman-Hall Realty, as plaintiffs, brought a civil action in the Superior Court (Lincoln County) against George A. Bomann, III as

defendant. Plaintiffs sought specific performance, or alternatively damages for breach, of a contract allegedly made between plaintiffs and defendant for the sale and purchase of real property in New Harbor, Maine owned by defendant and his wife Betsy as joint tenants and used by them as a summer residence. Defendant's answer included the affirmative defense that the agreement plaintiffs were seeking to enforce was unenforceable for failure to meet particular requirements of the Maine Statute of Frauds, 33 M.R.S.A. § 51(4).

Ruling on a motion by defendant asking that summary judgment be awarded in his favor, the presiding Justice on May 27, 1975, ordered entry of summary judgment for the defendant. Plaintiffs John and Margaret Chapman have appealed from this judgment.[1]

We sustain the appeal.[2]

On June 8, 1974 plaintiffs signed a document, not yet signed by defendant, the contents of which set forth an agreement that, through Chapman-Hall Realty, defendant Bomann would sell and plaintiffs would purchase the Bomann summer residence at New Harbor.

The presiding Justice ordered summary judgment for defendant on the rationale that since defendant had never signed the above-described document, the agreement contained in it was unenforceable for failure to comply with the writing requirement of the Maine Statute of Frauds. 33 M.R.S.A. § 51(4).

The presiding Justice had before him for consideration facts stated in sworn answers to interrogatories and in various affidavits submitted in connection with the motion for summary judgment.

The affidavit of Joan E. Simonds, a Chapman-Hall Realty broker, disclosed that plaintiffs rejected an initial offer made by defendant and defendant then submitted a counter-proposal for a sale and purchase agreement. Plaintiffs accepted it and signed the document setting forth the agreement. Thereafter, on June 14, 1974, Chapman-Hall Realty received from plaintiff John Chapman a check for $4,000.00 which, as added to an earlier down payment of $500.00, completed a 10% down payment to be deposited in an escrow account for the benefit of defendant. On the same day that the plaintiffs signed the document containing defendant's proposal for a purchase-sale contract the document was returned to the office of Chapman-Hall Realty. It was then forwarded to the defendant to be signed on his part.

On July 2, 1974 another person associated with Chapman-Hall Realty arranged for Joan Simonds to communicate with defendant regarding the document already signed by plaintiffs and forwarded to defendant for signature. This was done because plaintiffs had arranged, and were scheduled that same day to complete, a refinancing of their home in Massachusetts in anticipation of their purchase of defendant's summer residence in New Harbor. Joan Simonds reached defendant's wife by telephone and explained these circumstances to her and the consequent need for confirmation that the Bomanns would sign the document which had been forwarded for signature. Defendant's wife told Joan Simonds that she and her husband would sign the contract and return it to the office of Chapman-Hall Realty the following Saturday. Joan Simonds then called plaintiff Marga-

---

1. Chapman-Hall Realty initially participated as a plaintiff, but it is not a party to the appeal.

2. It should here be noted that defendant had filed a counterclaim. This Court twice remanded the case because the present appellants had purported to appeal from the judgment deciding the merits of the complaint against them before a disposition had been made of other aspects of the case (Rule 54(b) M.R.Civ.P.). Subsequently, by stipulation, judgments were entered dismissing the complaint as to Chapman-Hall Realty as well as the counterclaim of the defendant. Thereafter, defendant claimed that plaintiffs had still failed to take a proper appeal. Defendant's contention was that plaintiffs had failed to comply with a provision of the order of remand specifying the manner in which the appeal was to be returned to this Court. This continuing controversy as to the propriety of the appeal was not resolved until November 21, 1977 when the parties ultimately stipulated that the instant appeal was to be heard on the record originally before this Court, a supplemental record and the briefs originally submitted.

ret Chapman and told her exactly what defendant's wife had said. The Chapmans then refinanced their Massachusetts house that same day.[3]

Defendant filed an affidavit stating that he had not signed the purchase-sale document and had not signed either a note or memorandum as to it, and he had never received any portion of the purchase price and, further, plaintiffs never took possession of the premises or made any repairs to them. Defendant's affidavit also said that defendant lacked authority to bind his wife to a contract for the sale of their summer residence and that defendant had no knowledge that plaintiffs were refinancing their home on the basis of any oral negotiations.

A separate affidavit of defendant's wife stated that she had not authorized defendant to make an agreement to sell the Bomann residence in New Harbor.

To avoid applicability of the Statute of Frauds to the document signed by them and which they seek to enforce against defendant plaintiffs invoke the equitable principles of estoppel in pais and part performance.

While we conclude that plaintiffs' appeal must be sustained, we reach this decision on grounds other than those asserted by plaintiffs. We find it unnecessary to reach the question whether in the instant circumstances the document signed by plaintiffs, but not signed by defendant, should *as such* be *directly* enforceable as a contract binding on defendant, despite applicability of the Statute of Frauds. Rather, as more fully explained hereinafter, we decide this case by holding that the doctrine of promissory estoppel (as distinguished from estoppel in pais) applies, here, to raise genuine issues of material fact concerning (1) whether the *separate ancillary promise* made by defendant's wife, as attributable also to defendant, that she and her husband would sign, and return, the document signed by plaintiffs became a contract binding on defendant, and (2) whether, further,

with the promise of defendant's wife being deemed a promise binding on defendant's wife and also defendant, defendant should be barred from asserting the Statute of Frauds to deny its enforceability.

### 1.

The doctrine currently formulated and identified by the label "promissory estoppel" has substantive roots in the law which long antecede the use of ,the label. It has often been said that promissory estoppel is the principle by which contract law avoids injustice through recognition of a substitute for traditional consideration. See Williston on Contracts §§ 116, 139; *Allegheny College v. National Chautauqua County Bank of Jamestown,* 246 N.Y. 369, 159 N.E. 173 (1927) (Cardozo, C. J.). Another approach views promissory estoppel as a particularized formulation of estoppel functioning generally as an instrument utilized by equity to prevent injustice. Professor Ames observed that even before 1500, equity gave relief to a plaintiff who had incurred detriment on the faith of a defendant's promise. Ames, *Lectures on Legal History* at 143 (1913). See also Pomeroy's, *Equity Jurisprudence* § 808b (5th Ed. 1941).

Several Maine cases mention that reasonable and detrimental reliance on the promise of another may act as a substitute for consideration. Although charitable subscriptions have been upheld on a variety of theories, in *Central Maine General Hospital v. Carter,* 125 Me. 191, 195, 132 A. 417, 418 (1926) this Court noted:

> "It may also be true that in strict theory the sustaining of such promises to give cannot be upheld as a contract based on a valid consideration. . . . However, the courts have sustained them as contracts in numerous instances . . . where the performance in part at least of the purpose for which the funds were subscribed or promised were shown, *or where liabilities were incurred on the*

---

**3.** Although Joan Simonds did not have personal knowledge that the refinancing had occurred, her lack of such knowledge would not bear upon the decision made by the presiding Justice. Defendant's brief seems to admit that such was the fact, at least for the purposes of the disposition of the present appeal.

strength of such promise . . . ."
(emphasis supplied)

See also *Carr v. Bartlett,* 72 Me. 120 (1881).

In *Colbath v. H. B. Stebbins Lumber Company,* 127 Me. 406, 415, 144 A. 1 (1929) this Court referred to promissory estoppel as distinguishable from the more traditionally recognized equitable doctrine of estoppel in pais on the ground that estoppel in pais involves the misrepresentation of an existing fact. Simultaneously, however, in *Colbath* the Court suggested that, absent traditional consideration to make a promise binding as a contract, promissory estoppel can serve to excuse future performance of a condition or obligation.

In *LaGrange v. Datsis,* 142 Me. 48, 46 A.2d 408 (1946) this Court mentioned promissory estoppel as a particularized form of estoppel conceived broadly as a doctrine to do equity. Moreover, further language in *LaGrange* purporting to limit promissory estoppel to circumstances in which the promise involves a representation concerning the intent to abandon existing rights [4] is only dictum. The actual decision of the case is that defendant in fact made no promise; hence, there was nothing to generate at all the applicability of promissory estoppel, however broadly or narrowly conceived.

We are satisfied that the formulation of the principle of promissory estoppel in the Restatement of Contracts, § 90, as refined in Restatement (Second) of Contracts, § 90 (Tentative Drafts Nos. 1–7, 1973) to authorize limitation of the remedy and thus acknowledge the possibility of partial enforcement, is fundamentally in harmony with the principles already acknowledged in the law of Maine. Moreover, we find compelling the reasoning in support of the Restatement's formulation of promissory estoppel and are impressed by the widespread acceptance of that formulation in the case law of this country. See generally, 1A Corbin, *Contracts* §§ 193–209 (1963); 1 Willi-

ston, *Contracts* §§ 138–140 (3rd Ed. 1957); Annots., 48 A.L.R.2d 1069; 115 A.L.R. 152; Boyer, *Promissory Estoppel: Principle from Precedents,* 50 Mich.L.Rev. 639, 873 (1952).

■ Accordingly, we now adopt as the law of Maine the comprehensive formulation of the doctrine of promissory estoppel set forth in § 90 of the Restatement (Second) of Contracts (Tentative Drafts Nos. 1–7, 1973), reading as follows:

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires."

■ With the law of Maine thus declared, it is apparent that the circumstances set forth in the record raise several genuine issues of fact material to the question whether the promise made by Betsy Bomann should be attributable to her husband, and if so, whether that promise should be held binding by virtue of promissory estoppel.

The affidavit of Joan Simonds discloses sufficient information warranting factual conclusions that when Betsy Bomann made her promise that she and defendant would sign and return the document forwarded to them, she should reasonably have expected that her promise would induce plaintiffs to act in reliance on it. Betsy Bomann gave the promise in direct response to what she had been told was an inquiry being specially made because plaintiffs were about to undertake a substantial financial commitment to refinance their Massachusetts home in connection with their undertaking to purchase the Bomanns' summer residence. The "substantial financial commitment" language appearing in the affidavit also indicates a genuine factual issue concerning

---

4. Courts in other jurisdictions initially limited application of promissory estoppel to cases involving promises as to the abandonment of existing rights. Now, however, the doctrine has become generally recognized as having applicability, comprehensively, to promises relating to the future, provided the other requirements of the doctrine are satisfied. See, e. g., *Peoples National Bank v. Linebarger Construction Company,* 219 Ark. 11, 240 S.W.2d 12 (1951), and appropriate cases collected in Annots., 48 A.L.R.2d 1069 and 56 A.L.R.3d 1037.

whether plaintiffs had suffered harm or detriment by relying on the promise.

■ Despite the conclusory statement in defendant's affidavit concerning his wife's lack of authority to act on his behalf, the record reveals a genuine issue of fact on this question. The document containing the sale-purchase agreement identifies not only defendant but also his wife as a "seller." In his sworn answer to interrogatories John C. Chapman, President of Chapman-Hall Realty, stated that defendant had suggested various changes to be made in the drafting of the document setting forth defendant's counter-proposal for a sale-purchase agreement with the plaintiffs. These circumstances would warrant a finding that by participating in the drafting of the document defendant knew its contents, and the designation of defendant's wife as well as defendant as a "seller" was a holding out by defendant that defendant and his wife were acting together in selling their summer residence and, therefore, defendant's wife was authorized to act for defendant in relation to the sale.[5]

### 2.

The question remaining to be discussed, then, is whether, in addition to making Betsy Bomann's separate ancillary promise binding as a contract capable of being attributed to defendant, promissory estoppel will bar defendant from asserting the Statute of Frauds to deny enforceability of that otherwise binding promise.

In *Lawrence v. Chase,* 54 Me. 196, 200 (1866) this Court acknowledged, as generally accepted, the principle that a separate oral

" . . . agreement on the part of the defendant to execute and deliver . .

his writing obligatory to convey . . . certain real estate, upon certain terms and conditions . . . named [in said writing]",

though not itself within the textual language of the Statute of Frauds, is deemed to be within the penumbra of the Statute's policy and thus becomes unenforceable like the underlying agreement to which it relates and to which the Statute of Frauds applies in terms. Simultaneously, however, this Court noted in *Lawrence v. Chase* that even if such would be the rule in a "suit at law", a court of equity could provide "remedy against the fraud thus attempted." (at 201) Although some authorities hold to the contrary, many others agree with the *Lawrence v. Chase* statement that on principles of equity (among which estoppel would be included) a defendant may be barred from asserting the policy of the Statute of Frauds to deny enforceability to a separate, ancillary oral promise, otherwise binding, to sign as a writing an agreement which, lacking such signature, the Statute of Frauds in terms renders unenforceable.

This limitation upon the penumbral policy applicability of the Statute of Frauds is conceived to be a particularized application of the general equitable principle that since it is the purpose of the Statute of Frauds to prevent fraud, that Statute cannot be permitted to be itself an instrument of fraud. Cf. *Dehahn v. Innes,* Me., 356 A.2d 711 (1976); *Gosselin v. Better Homes, Inc.,* Me., 256 A.2d 629 (1969).

■ Comment f. to § 178 of the Restatement of Contracts states this principle in particular relation to the doctrine of estoppel, including both estoppel in pais and promissory estoppel, as follows:

---

**5.** It may also be noted that there is likewise a genuine issue of fact as to whether there was actual, or apparent, authority for defendant to act on behalf of his wife Betsy. By her making the promise described in the affidavits, defendant's wife could be taken to have known the contents of the document she was promising to sign. This being so, her promise to sign a document designating her, as well as her husband, as a "seller" could be a ratification by her of her husband's prior undertaking to act for her in arranging a contract of sale. More-

over, defendant's wife could be taken as acknowledging a continuing authority in her husband to act on her behalf in relation to selling their summer residence in light of one of the sworn answers to interrogatories in which it was asserted that when defendant's wife made the promise that she and her husband would sign the document containing the sale-purchase agreement, she also stated that she was " . . . waiting to have Mr. Bomann bring the contract up to Damariscotta [the location of the Chapman-Hall Realty office]."

"Though there has been no satisfaction of the Statute, an estoppel may preclude objection on that ground in the same way that objection to the non-existence of other facts essential for the establishment of a right or a defence may be precluded. A misrepresentation that there has been such satisfaction if substantial action is taken in reliance on the representation, precludes proof by the party who made the representation that it was false; and a promise to make a memorandum, if similarly relied on, may give rise to an effective promissory estoppel if the Statute would otherwise operate to defraud."

See also *Seymour v. Oelrichs,* 156 Cal. 782, 106 P. 88 (1909); *Alaska Airlines v. Stephenson,* 15 Alaska 272, 217 F.2d 295 (9th Cir. 1954); *21 Turtle Creek Square, Ltd. v. New York State Teachers' Retirement System,* 432 F.2d 64 (5th Cir. 1970), *cert. den.* 401 U.S. 955, 91 S.Ct. 975, 28 L.Ed.2d 239 (1971).

This principle, perceived many years ago in the generalized discussion in *Lawrence v. Chase,* supra, we now reaffirm as the law of Maine. We adopt it as it is formulated in Comment f. to § 178 of the Restatement of Contracts, above quoted.

In further clarification of this exposition of Maine law we address specifically the phrase in Comment f., "if the Statute would otherwise operate to defraud." This does not contemplate that the person who makes a separate ancillary promise to sign, or make a sufficient memorandum of, an already existing agreement to which the Statute of Frauds applies in terms must have made the promise with an actual subjective intention to relinquish the right to assert the Statute of Frauds or with an actual intention otherwise to deceive. While the existence of such subjective intention would be sufficient to preclude assertion of the Statute of Frauds, other circumstances can also be sufficient. The criterion signified by the words "if the Statute would otherwise operate to defraud" is whether all the particular circumstances in which the separate ancillary promise to sign or execute a sufficient memorandum is

made show, objectively, that a fraud, or a substantial injustice tantamount to a fraud, would be perpetrated upon the promisee were the promisor allowed to assert the Statute of Frauds as a bar.

■ In the present situation the affidavits sufficiently indicate that the defendant's wife, as a joint tenant with defendant of the realty at issue, was told (1) plaintiffs were about to make a substantial change in their financial position in connection with the already existing oral agreement for the sale and purchase of the land, (2) before plaintiffs did this, they wanted to know whether defendant would sign the document which plaintiffs had already signed. Fully aware of what plaintiffs were seeking, defendant's wife gave exactly the confirmation being sought, promising that she and her husband would sign the purchase and sale agreement as a writing and return it to the real estate broker involved in the transaction.

These circumstances give rise to genuine issues of material fact concerning whether defendant's wife, by conduct attributable also to defendant, actually intended or reasonably should have expected that the promise made would induce plaintiffs to make a substantial change in their financial position, a change which plaintiffs in fact made in reliance upon their justifiable belief that the absence of a writing was not to be a matter of concern. In sum, the totality of the circumstances depicted in the record precipitate general factual issues material to whether it would be grossly unjust and, therefore, tantamount to a fraud on the plaintiffs to allow defendant to assert the Statute of Frauds, by invoking the penumbral policy (rather than the actual terms) of the Statute, to bar enforceability of the separate ancillary promise for the making of a sufficient writing.

■ If, after the requisite evidentiary hearing, it is found that on promissory estoppel grounds defendant is barred from asserting the Statute of Frauds to deny specific enforcement of the binding separate ancillary promise of defendant's wife, as attributable also to defendant, the Court, as an incident of the present proceeding,

could order defendant to sign the document which plaintiffs had already signed. By defendant's compliance with that order, the Statute of Frauds would be rendered inapplicable to the principal sale-purchase agreement between defendant and plaintiffs, and plaintiffs would be in position to continue seeking enforcement of it as alleged in their complaint. See *21 Turtle Creek Square, Ltd. v. New York State Teachers' Retirement System,* supra; see also enlightening discussion in Annot. 56 A.L.R.3d 1037, 1058–1064.[6]

The entry is:

Appeal sustained; judgment for defendant set aside; remanded to the Superior Court for further proceedings consistent with the opinion herein.

DELAHANTY, J., sat at argument and conference but did not otherwise participate.

**6.** We previously emphasized in delineating the precise scope of our decision herein that we do not reach, or intimate opinion on, the question whether promissory estoppel would enable plaintiffs *directly* to enforce the oral sale-purchase agreement *as such,* notwithstanding that the Statute of Frauds applies in terms to that agreement. The Restatement (Second) of Contracts § 197 (Tentative Drafts Nos. 1–7, 1973) has taken the position that:

"A contract for the transfer of an interest in land may be specifically enforced notwithstanding failure to comply with the Statute of Frauds if it is established that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement."

The Comment to § 197 indicates that the section restates the "part performance doctrine." The Restatement (Second) of Contracts (Tentative Drafts Nos. 1–7, 1973) further provides in § 217A:

"(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.

"(2) In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant:

DUFRESNE, A. R. J., sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.

"(a) the availability and adequacy of other remedies, particularly cancellation and restitution;

"(b) the definite and substantial character of the action or forbearance in relation to the remedy sought;

"(c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;

"(d) the reasonableness of the action or forbearance;

"(e) the extent to which the action or forbearance was foreseeable by the promisor."

See also Comment to said § 217A.

Estoppel in pais and part performance have been invoked in many cases to allow enforceability of a contract, despite textual applicability of the Statute of Frauds, where there was a misrepresentation of an existing fact or a part performance constituted by acts specifically referable to such contract. See *Green v. Jones,* 76 Me. 563 (1885); *Woodbury v. Gardner,* 77 Me. 68 (1885); *McGuire v. Murray,* 107 Me. 108, 77 A. 692 (1910); *Berman v. Griggs,* 145 Me. 258, 75 A.2d 365 (1950); *Busque v. Marcou,* 147 Me. 289, 86 A.2d 873 (1952). Yet, at this time we refrain from deciding whether we should adopt the broad formulation of principle, as including also promissory estoppel, contained in the Restatement (Second) of Contracts §§ 197 and 217A (Tentative Drafts Nos. 1–7, 1973). Indeed, before we could so decide, we should be obliged to analyze the policy considerations seeming to underlie *LaFlamme v. Hoffman,* 148 Me. 444, 95 A.2d 802 (1953).