Bernard G. FAUNCE

v.

AMERICAN CAN COMPANY, INC.

Supreme Judicial Court of Maine.

Nov. 2, 1979.

Nisbet, MacNichol & Ludwig, P.A. by Alexander MacNichol (orally), South Portland, for plaintiff.

Verrill & Dana by John W. Philbrick (orally), Portland, for defendant.

Before POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

Defendant American Can Company, Inc., decided to close its Portland, Maine, plant toward the end of 1973. At that time each of the plaintiffs, Bernard G. Faunce and Evelyn Hale, was short by two months of being eligible to retire on pension under the contractually prescribed "80 test", so-called, a retirement eligibility criterion based on "accredited service" and a combination of age and "accredited service." Aware of plaintiffs' situation, defendant's duly authorized personnel manager promised them that defendant would ignore the deficiency and recognize plaintiffs as eligible, under the "80 test", to cease service by retiring. Relying on defendant's promise, plaintiffs retired from service with the company in November 1973. Subsequently, they were denied payment of retirement pension benefits because defendant reneged on its promise and asserted that plaintiffs lacked the contractually requisite eligibility to retire on pension.

On September 28, 1976, plaintiffs instituted an action against defendant in the Superior Court (Cumberland County) seeking damages for the alleged loss caused them by defendant's having broken its promise. At the trial, held jury-waived, defendant conceded its liability for having broken a legally binding promise to plaintiffs but contested plaintiffs' claim as to the measure of damages. Plaintiffs' position was that damages should be awarded them in accordance with the level of retirement pension benefits set forth in defendant's collective bargaining agreement that became effective as of April 1, 1974 rather than, as argued by defendant, pursuant to the lower level of pension benefits set forth in the collective bargaining agreement of April 1, 1971 in effect when plaintiffs retired in November 1973. The rationale of plaintiffs' contention was that the very terms of the 1971 collective bargaining agreement under which, in consequence of defendant's binding promise, plaintiffs were rendered eligible to retire also required *postponement* of the *determination* of the *availability* and *amount* of plaintiffs' retirement pension benefits until the expiration of two years from the date when plaintiffs ceased service, by retiring. This being so, argued plaintiffs, the *definitive determination* of the amount of their pension benefits was postponed until November of 1975 and, therefore, was to be made in accordance with the pertinent provisions of the collective bargaining agreement *then* in effect, the 1974 agreement.

The Superior Court rejected plaintiffs' contention and awarded them damages in accordance with the lower level of pension benefits set forth in defendant's 1971 collective bargaining agreement. From the entry of the judgment so providing each plaintiff has appealed to this Court.

We sustain the appeals.

The basis of defendant's concession of liability at trial was that plaintiffs had good reason to, and did, rely on the promise made to them by defendant's duly authorized personnel manager. Defendant agreed, therefore, with plaintiffs that its liability to them arose by reason of promissory estoppel:

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Chapman v. Bomann,* Me., 381 A.2d 1123, 1127 (1978), quoting Restatement (Second) of Contracts § 90.

As to the measure of damages, defendant offered an argument resting on the fact that when its personnel manager made the promise to plaintiffs, he showed each of them a written document containing information about the amount of their pension benefits. Defendant maintained that these written summaries were of vital importance in determining the measure of the damages to be awarded. Defendant stressed the point that in the summaries were calculations of pension benefit amounts based on the level of benefits set forth in defendant's 1971 collective bargaining agreement in effect in November, 1973 when plaintiffs ceased service by retiring. Defendant argued that these calculations must be taken as part of the substance of its promise to plaintiffs; hence, on the promissory estoppel rationale of defendant's liability to plaintiffs, the damages to be awarded should be limited to the 1971 level of pension benefits reflected by the calculations in the written summaries.

The Superior Court found this argument persuasive and decided that plaintiffs were entitled to, and did, rely "solely on the defendant's promise to pay benefits at the level established by the 1971 contract." In so holding, the Superior Court committed error of law.

Even if we take defendant's argument at face value and incorporate the contents of the written summaries as a substantive part of its promise to plaintiffs, defendant's argument must fail. The summaries contained information additional to the calculations of the amounts of pension benefits, which explained the purpose served by them. The summaries stated that the calculations were "*projected* as of today" (emphasis added), thereby indicating that the calculations were not definitive but could be affected by possible future events. Another statement made in plain and forceful language was:

"the information furnished must necessarily be subject to the *legal documents* pertaining to each benefit plan, which must be *controlling* as to the *availability* and *amount* of benefits." (emphasis added)

Thus, even with the entirety of the written summaries included as a part of defendant's promise to plaintiffs, the promise *did not* definitively establish either the availability or the amount of pension retirement benefits. Rather, defendant promised plaintiffs that the availability and amounts of pension benefits would be established by the provisions of the *legal documents* having pertinence, and these alone would be *controlling.*

On the damages issue, then, what defendant promised plaintiffs and what they had a right to expect and rely on, resolves into a question of law: the correct interpretation of defendant's 1971 and 1974 collective bargaining agreements which are, at least *prima facie,* legal documents that are pertinent insofar as each of them contains provisions relating to a continuously operative retirement pension plan and system of defendant.

Plaintiffs having ceased service with defendant company, by retiring, in November 1973, their eligibility to retire from service at that time was governed by the provisions of defendant's collective bargaining agreement then in effect, the April 1971 agreement. Eligibility to retire on pension on the basis of the "80 test" was provided in Article IV, Section 2(a) and (c) of that agreement, as follows:

"a. On or after January 1, 1966, any employee whose job has been discontinued by reason of a permanent shutdown of a plant covered by this Agreement and who does not transfer to another plant of the Company may retire upon application, if he meets the conditions specified in subsection c. of this Section 2.

" . . . .

"c. An employee described in . . . the preceding . . . [subsection] a. . . . shall be eligible to retire on pension, if, on the date of retirement, he shall have completed at least 15 years of accredited service and . . . whose combined age and years of accredited service shall equal 80 or more."

We have already noted that each plaintiff fell short by two months of meeting this "80 test" of eligibility and that the effect of defendant's promise, binding by virtue of promissory estoppel, was to make the deficiency nonexistent and thereby to render plaintiffs eligible to cease service with defendant by retiring in November, 1973.

The issue of the correct measure of damages cannot be resolved, however, without reference to other provisions of defendant's 1971 collective bargaining agreement. This is so because each plaintiff found it necessary to compute "accredited service", for the purposes of the "80 test", by invoking the provisions of Article II, Section 1(7)(k) of the 1971 collective bargaining agreement. Under these provisions plaintiffs were enabled to have their "accredited service" enlarged beyond the time they had actually worked, on the following basis:

"there shall be included in and be part of accredited service time lost in the last continuous spell of absence not followed by a return to work . . . by reason of layoff not in excess of 2 years, . .."

Since plaintiffs were working at a plant that was being permanently shut down, and plaintiffs were electing not to transfer to work at any other of defendant's plants, they were entitled to, and did, include as part of their "accredited service" the maximum of two years, this being the "time lost

in the last continuous spell of absence not followed by a return to work . . . by reason of layoff . . .." The extra time thus used by plaintiffs in computing their "accredited service" was commonly referred to as retirement "creep" time.

Because each plaintiff was obliged to invoke the "creep" time provision of Article II, Section 1(7)(k) of the 1971 collective bargaining agreement to achieve eligibility to retire under the "80 test", another provision in Article II, Section 1(7)(k) became applicable, namely, that each plaintiff

"shall have his right to benefits . . . *determined* on the basis of *this accredited service* and age *as of the end of the second year of such continuous period of absence.*" (emphasis added)

By virtue of this further provision, plaintiffs' retirement was known as a "creeping" retirement. This connoted that the time of the actual cessation of service was *not* the date for the *determination* of the *availability* and *amount* of retirement pension benefits but, rather, that this determination must await the expiration of two years from the time of the cessation of service.

Thus, as to the determination of the availability and amount of the retirement pension benefit of each of the plaintiffs, Article II, Section 1(7)(k) of defendant's 1971 collective bargaining agreement made pertinent, and controlling, whatever collective bargaining agreement of defendant would be in effect in November, 1975, provided that it contained provisions regarding the same pension plan and system, as continuing, dealt with in the 1971 collective bargaining agreement. Examination of defendant's 1974 collective bargaining agreement shows that it was plainly such a pertinent legal document.[1]

---

1. Indeed, it appeared in evidence that defendant itself interpreted its 1971 and 1974 collective bargaining agreements as being thus contractually interrelated. It was shown that other employees who retired from service at the same plant as plaintiffs and who, like plaintiffs, were obliged to resort to "creep" time to achieve eligibility under the "80 test" were paid retirement pension benefits on the levels prescribed by the 1974 collective bargaining agreement. These other employees differed from

plaintiffs in the single relevant respect that they fully met the "80 test" requirements whereas plaintiffs met them only because of defendant's promise to treat their shortage of two months as a nonexistent deficiency. Yet, once that promise by defendant was forthcoming and became, as defendant admits, a legally binding promise, its effect was to place plaintiffs in exactly the same status of retirement eligibility as the other employees. Thus, defendant had no rational basis to differentiate

Accordingly, the correct measure of the damages to be awarded plaintiffs is the higher level of the pension benefits set forth in defendant's 1974 collective bargaining agreement in effect in November 1975 when the *determination* of the availability and amount of plaintiffs' retirement pension benefits was to be made. In ruling otherwise, the Superior Court committed error of law.

The entry is:

Appeals sustained.

The judgment in favor of plaintiffs is modified by striking the second sentence thereof and substituting in its place the sentence:

"Defendant to provide to each plaintiff retirement benefits coextensive to those provided in the 1974 collective bargaining agreement between American Can Company, Inc. and the International Association of Machinists and Aerospace Workers." [2]

As thus modified, the judgment for plaintiffs is affirmed.

Case remanded to the Superior Court for entry of the modified judgment prescribed herein.

Costs on appeal to each plaintiff.

McKUSICK, C. J., and GLASSMAN, J., did not sit.

between plaintiffs and the other employees as to the level of retirement benefits. This is so *a fortiori* in light of defendant's concession that its liability to plaintiffs arose only by reason of promissory estoppel and that plaintiffs never made any *actual* legally binding contract with defendant to the effect that in *quid pro quo* consideration of defendant's promising to ignore that plaintiffs were two months short of qualifying for retirement under the "80 test", plaintiffs promised to restrict the amount of their pension benefits to the level set forth in the 1971 collective bargaining agreement.

2. In their complaint plaintiffs asked that the damages be ordered paid to them monthly, in specified amounts, as provided in the 1974 collective bargaining agreement. In effect, then, plaintiffs sought specific performance of the obligation rather than a single lump sum award representing the present value of the pension benefits payable in the manner prescribed in the collective bargaining agreement. The law allows plaintiff this choice. *Stopford v. Boonton Molding Company, Inc.*, 56 N.J. 169, 265 A.2d 657, 666–668 (1970).