## ATTLEBORO MUTUAL INSURANCE COMPANY

#### v.

## GRANGE MUTUAL INSURANCE COMPANY.

Supreme Judicial Court of Maine.

Argued April 30, 1992.
Decided July 20, 1992.

James Brett Main, (orally), Platz & Thompson, Lewiston, for plaintiff.

Charles Harvey, (orally), Verrill & Dana, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

This action arose out of a fire that destroyed the Houlton home of Daniel and Karen Weymouth on December 22, 1989. The Weymouths presented a claim to the defendant Grange Mutual Insurance Company (Grange) who refused to cover the loss. The Weymouths then requested payment from the plaintiff Attleboro Mutual Insurance Company (Attleboro). Attleboro paid their claim in the amount of $66,982 and brought the present action against Grange for indemnity or contribution.[1] Both parties moved for summary judgment. After a hearing, the Superior Court (Cumberland County, *Perkins, J.*) entered judgment in favor of Grange from which Attleboro appeals. Attleboro contends that the Superior Court erred in granting Grange's motion for summary judgment because a genuine issue of material fact remains as to the existence of an implied contract of insurance between Grange and the Weymouths. Finding no error, we affirm the judgment.

The Weymouths insured their home with Attleboro until August 1989, when Attleboro refused to renew their policy because of the Weymouths' failure to complete certain renovations. On August 19, 1989, the Weymouths' insurance agent, Michael McInnis, who had authority to bind coverage with both Attleboro and Grange, completed an application for coverage on the Weymouths' behalf with Grange and on that same date, he wrote to the Weymouths advising them that "we have had to replace the coverage with Grange Mutual for renewal date 8–24–89." Also on the same date, however, he issued an insurance binder to the Weymouths' mortgagee, Katahdin Trust, in which he named not Grange, but Attleboro, as the Weymouth's insurance carrier. There is no evidence that Grange ever received the Weymouths' application for coverage and Grange did not issue a policy to the Weymouths.

◼ Attleboro contends that McInnis's awareness of Grange's general underwriting standards raises a genuine issue as to the existence of an implied contract of insurance between Grange and the Weymouths, relying on the decision of this court in *Utica Mut. Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 519 A.2d 185 (Me.

1. On appeal, Grange has not raised Attleboro's standing to bring this action.

78

1986).[2] In that case we held that in order to recover on the basis of an implied contract, the party asserting the implied contract must show that the agent had the authority to bind the insurer, and it is *certain* that the insurer would have accepted the risk had it received a proper request. *Id.* at 186. Grange concedes that its agent McInnis had authority to bind it to an insurance contract, and thus this case turns on whether there is a genuine issue as to the *certainty* that Grange would have issued the policy on McInnis's request, an issue on which the plaintiff, Attleboro, has the burden of proof.

■ We will affirm a summary judgment if the record discloses that there is no genuine issue of material fact and that any party is entitled to judgment as a matter of law. *See* M.R.Civ.P. 56(c); *Saltonstall v. Cumming,* 538 A.2d 289, 290 (Me.1988). "It is proper to grant a summary judgment where the plaintiff had the burden of proof on an essential issue and it is apparent that the defendant would be entitled to a directed verdict if the plaintiff presented no more evidence than he generated at the motion hearing." *Casco Northern Bank N.A. v. Pearl,* 584 A.2d 643, 645 (Me.1990).

In *Utica Mut.,* the facts giving rise to a finding of certainty of renewal, and thus to an implied contract were compelling; each year for fourteen years (before the policy expired because of a clerical error) the insurer had automatically renewed an insurance policy. Here, by contrast, Grange had no prior dealings with the Weymouths' house. David Reynolds, Grange's president, stated in an affidavit that homeowners' policies are often declined by Grange, and that the risk would have had

to be investigated by its underwriters. Attleboro itself had just refused to insure the house, declining to renew the Weymouths' policy. Attleboro's only evidence of certainty of acceptance by Grange was McInnis's testimony that he was unaware of any reason why Grange would not cover the Weymouths' house.[3] Without additional evidence, in the circumstances of this case, that testimony by McInnis is insufficient to support a finding of *certainty* that Grange would have accepted the risk. At trial, Grange would be entitled to a directed verdict based on that evidence, and is therefore entitled to a summary judgment on the issue of an implied contract between the Weymouths and Grange.

The entry is:

Judgment affirmed.

All concurring.

---

2. Since Attleboro did not argue before the Superior Court that the letter McInnis wrote to the Weymouths constituted an express contract with Grange, the issue is not preserved. *See Sherwood v. Town of Kennebunkport,* 589 A.2d 453, 454 n. 1 (Me.1991). There is nothing else in the record that could generate a factual issue that an express contract existed between the Weymouths and Grange.

3. Attleboro relies on the following deposition testimony of McInnis to create an issue on certain acceptance:

Q. Okay is there any reason that you know of that the Grange would not have issued the—type of policy that you were looking for for coverage on the Weymouth property to start in August of 1989?
A. Not that I'm aware of.
Q. Okay. And you worked with them as an authorized agent since 1983?
A. /83, /84, yes.