1998 ME 77

Irwin YAFFIE, et al.

v.

**LAWYERS TITLE INSURANCE CORP.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 27, 1998.

Decided April 17, 1998.

William D. Robitzek, Paul F. Macri, Lewiston, for plaintiffs.

John B. Emory, Portland, for defendant.

Before ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

CLIFFORD, Justice.

[¶ 1] Lawyers Title Insurance Corporation (Lawyers Title) appeals from a judgment entered in the Superior Court (Cumberland

County, *Brennan, J.*) following a jury-waived trial. The court ordered that the insurance policy issued by Lawyers Title to the Yaffies be reformed and that Lawyers Title undertake the defense of the Yaffies in litigation challenging the title to a portion of their property. Lawyers Title contends that the Superior Court erred in finding that there was a mutual mistake of fact regarding the policy, and in denying summary judgment to Lawyers Title at an earlier stage in the proceedings. We disagree with those contentions. We agree, however, with Lawyers Title that, to the extent that the order provides that Lawyers Title pay attorney fees incurred by the Yaffies *in this action,* the court erred. Accordingly, we modify the judgment and as modified, affirm.

[¶ 2] Lawyers Title issued a policy to the Yaffies in 1991 insuring their title to a parcel of land in New Gloucester. The title policy was written by Lawyers Title's agent James H. Hopkinson, who also represented the Yaffies in their purchase of the property and in the preparation of various documents pertaining to the Yaffie's acquisition.

[¶ 3] The policy insured title to a five-acre parcel located northeasterly of Meadow Lane. The deed description from the grantor, Jean McGhee, to the Yaffies is based on a February 1991 survey that depicts Cleaves Road extending northeasterly from Meadow Lane and traversing the parcel. The deed conveys a right of way "in common with the Grantor, her heirs and assigns and with others, over the abandoned Cleaves Road." Based on Attorney Hopkinson's explanation

that the abandonment of Cleaves Road would leave abutting owners with title to the center of the road, and aware that the grantor was allowing the Yaffies to draw the precise boundary lines as they desired prior to finalizing the deed, the Yaffies had their parcel surveyed and the description in the deed drawn so that their property would include the *entire* portion of Cleaves Road in that area.[1] Hopkinson also advised Mr. Yaffie that notwithstanding the Town's abandonment of rights to Cleaves Road, rights to use the road might be asserted by other owners further up the road and by other grantees of Jean McGhee. Hopkinson did not research for the Yaffies who those individuals might be.[2]

[¶ 4] Details of the title insurance policy requested by Mr. Yaffie were not discussed, but it was understood that Hopkinson "would take care of it." Mr. Yaffie understood that the insurance would provide appropriate protection should anyone else come along to claim title to the property.[3] Hopkinson testified to the same understanding.

[¶ 5] In drafting the title insurance policy,[4] Hopkinson inserted as a standard exception that is included in Lawyers Title Insurance policies the following:

THIS POLICY DOES NOT INSURE AGAINST LOSS OR DAMAGE BY REASON OF THE FOLLOWING:

. . . .

5. Title to and rights of the public and others entitled thereto in and to those portions of the insured premises lying

---

1. Mr. Yaffie testified:

   [T]he advice was that if I moved the border out so that I owned on both sides, then the road would be totally in my control and I would have—with the exception of those that were identified in the deed, the ability to stop people from trafficking over that road.

2. Hopkinson was asked:

   COURT: [Y]our operating assumption was [that Yaffie] owns whatever portion of that abandoned road is within his metes and bounds, and his worst case is somebody else has got an easement over it.
   WITNESS: Yes.

3. The redirect examination of Yaffie proceeded as follows:

   Q. [Hopkinson told you he would provide you with] the appropriate protection in case anyone else came along to claim title to your property?
   A. Correct.
   Q. Okay. And did it matter to you whether that person coming along was a long-lost heir or had an unrecorded deed, or whatever their reason was? Did you care what the reason was that that person might be coming along?
   A. No. I just wanted protection for what I bought.

4. Subject to the exclusions and exceptions, the policy covers loss incurred due to title to the property being vested in any other person than the Yaffies and "any defect in or lien or encumbrance on such title."

within the bounds of *adjacent* streets, roads, and ways. . . .

(emphasis added). Hopkinson testified that he did not intend the exception to deny coverage for claims to the fee title in Cleaves Road, because it is not an adjacent road but one *encompassed* by the property. He further testified that he could have excluded it, and indeed has excluded such claims in other policies he has written. He also testified that the purpose of Exception 5 is to except from coverage claims related to use of roads that *abut* the covered parcel.

[¶ 6] The Yaffies fenced Cleaves Road when they were bothered by increased snowmobile traffic. Snowmobilers tore down the fence. In March, 1994 the Yaffies sued the snowmobilers, in a case still pending. *See Irwin Yaffie and Phyllis Yaffie v. Ernest J. Russell III, Royal River Riders Snowmobile Club,* No. CV–94–218 (Me.Super.Ct.Cum.Cty.). The Yaffies joined the Town of New Gloucester as a party defendant in that suit in January, 1995. The Town filed a counterclaim alleging that the Town had title to Cleaves Road. Hopkinson advised the Yaffies that since *title* to Cleaves Road was now being litigated, and not merely the *use* of the road, they should make a claim on their policy for their defense against the counterclaim. When the Yaffies made their claim, Hopkinson indicated to Lawyers Title that he believed that the Town's claim was covered under the policy.

[¶ 7] The Yaffies brought this two-count complaint against Lawyer's Title after Lawyers Title denied coverage pursuant to Exception 5. Count I sought a declaratory judgment that there was coverage pursuant to the terms of the policy, and that the policy applied to protect Yaffie against the counterclaim brought by the Town. In Count II, the Yaffies requested that the court reform the policy to the extent that, because of mutual mistake, the policy did not provide coverage for a claim of title to the fee in Cleaves Road. The court granted a summary judgment to Lawyers Title on Count I, finding that Exception 5 unambiguously relieves Lawyers

Title from a "duty to defend a claim of title to that portion of the Yaffies' land that lies within the bounds of Cleaves Road." [5] The court denied summary judgment to Lawyers Title on Count II of the complaint, and Count II proceeded to a non-jury trial on the merits. Following trial, the court ordered reformation of the policy to eliminate Exception 5 in order to conform the policy to the parties' mutual understanding that the dispute involving the Town's claim to fee title in Cleaves Road is a covered event and that Lawyers Title is required to provide a defense to the Yaffies. This appeal by Lawyers Title followed.

## I.

[¶ 8] Lawyers Title challenges the court's conclusion that there was a mutual mistake of fact justifying reformation of the insurance policy, and also contends that the findings of fact on which its conclusion is based are clearly erroneous. A mutual mistake is one "reciprocal and common to both parties, where each alike labors under the misconception in respect to the terms of the written instrument." *Bryan v. Breyer,* 665 A.2d 1020, 1022 (Me.1995) (quoting Horton & McGehee, *Maine Civil Remedies* § 14.16 at 14–19, 20 (1994)). The mistake "must be material to the transaction," *Poling v. Northup,* 652 A.2d 1114, 1116 (Me.1995), and must "touch the subject matter of the bargain and not merely be collateral to it." *Interstate Indus. Unif. Rental Inc. v. Couri Pontiac, Inc.,* 355 A.2d 913, 918 (Me.1976). The party seeking reformation must prove the existence of mutual mistake by clear and convincing evidence. *See Day v. McEwen,* 385 A.2d 790, 794 (Me.1978). *See also Taylor v. Commissioner of Mental Health,* 481 A.2d 139, 153 (Me.1984) (pursuant to clear and convincing standard of proof the party with the burden of persuasion prevails only if the factfinder concludes that the truth of her factual contentions are highly probable).

[¶ 9] In contending that the court erred in its order of reformation, Lawyers Title disputes the finding of the court that

---

5. The Yaffies have not appealed or in any way challenged the entry of judgment against them on Count I. We are therefore not called upon to

determine whether the court was correct in concluding that the exception unambiguously excluded the current dispute from coverage.

both parties had an understanding that the policy provided coverage for the Town's claim of title to Cleaves Road.[6] The court found that the Yaffies and Hopkinson believed there was coverage for claims of title by third parties to the land to which the Yaffies received a fee interest, including Cleaves Road to the extent the Yaffies had a fee interest in it. Lawyers Title contends that because Yaffie and Hopkinson did not specifically discuss coverage of claims by *the Town* to Cleaves Road, that the finding of a mutual mistake cannot be upheld. We disagree. The parties need not anticipate the exact type of coverage, nor, as in this case, the specific claimant to the fee interest in Cleaves Road, i.e., the Town, in order for the court to order reformation. Both the Yaffies and Hopkinson understood the policy to cover any claim of title to Cleaves Road.[7]

[¶ 10] An added factor supporting reformation is what the Superior Court aptly described as the "unique situation" by which Hopkinson acted as agent for *both* parties, making his intentions, almost by definition, the mutual intentions of the parties. *Cf. Berman v. Griggs,* 145 Me. 258, 262–63, 75 A.2d 365, 367 (1950) (law of principal and

agent applies when lawyer acts on behalf of client); *Mockus v. Melanson,* 615 A.2d 245, 247 (Me.1992) (attorney's actions of commission and omission "are to be regarded as the acts of the party represented"). The agent's knowledge of the insured's needs is binding on the company, and reformation is appropriate to conform to the agreement between the agent and the insured.[8] *Metropolitan Cas. Ins. Co. of N.Y. v. Friedley,* 79 F.Supp. 978, 984 (N.D.Iowa 1948). Both the Yaffies and Hopkinson believed there was coverage for the Town's claim of title to Cleaves Road. That issue of coverage is material,[9] and the court reasonably could have been persuaded, to a high probability, that there was a mutual mistake. Accordingly, the court correctly ordered reformation of the policy.[10]

**II.**

[¶ 11] The court ordered that Lawyers Title pay the Yaffies for legal fees and costs incurred from the date of the assertion of the claim by the Town. Lawyers Title contends that even if reformation of the policy has been properly ordered, that Lawyer's Title is not responsible for the legal fees incurred by the Yaffies in this declaratory

6. Lawyers Title also contends that the court erred in finding that Cleaves Road was included within the Yaffie's property. Contrary to the argument of Lawyers Title, the court did not find the *entire length* of Cleaves Road to be within the Yaffies boundary, nor did it have to make such a finding. The court did find the entire width of Cleaves Road to be within the Yaffie's property for a *portion* of its length. Both the Yaffies and Hopkinson believed that the Yaffies held a fee interest in the road.

7. Insurance policies may be reformed when they state that they cover one type of interest, when the intention was to cover another. *See Longhurst v. Star Ins. Co.,* 19 Iowa 364, 370–71 (1865) (policy reformed when the insured applied for insurance on his interest in a mechanic's lien interest in real estate, but the policy only covered mortgagees); *see also American Equitable Assurance Co. v. Powderly Coal & Lumber Co.,* 225 Ala. 208, 142 So. 37, 40 (1932) (designation of the insured as a mortgagee when in fact he was insuring his interest in labor and materials in realty, held to be a mutual mistake justifying reformation).

8. We note that 24–A M.R.S.A. § 2422(2) (1990) provides:

The authorized agent of an insurer shall be regarded as in the place of the insurer in all respects regarding any insurance effected by him. The insurer is bound by his knowledge of the risk and all matters connected therewith. Omissions and misdescriptions known to the agent shall be regarded as known to the insurer and waived by it as if noted in the policy.

9. Lawyers Title argues that coverage for claims against the parcel lying within Cleaves Road is not a material element of the policy. The mistake "must be material to the transaction," *Poling,* 652 A.2d at 1116, and must "touch the subject matter of the transaction and not merely be collateral to it." *Interstate Indus. Unif. Rental Inc.,* 355 A.2d at 918. Based on the testimony of the Yaffies, corroborated by that of Hopkinson, their agent, that the policy was intended to protect against later claimants to the property—as well as the well-supported finding that the parties believed that the Yaffies held a fee interest in Cleaves Road where it was within their boundary—the coverage issue is material.

10. Lawyers Title's contention that the Superior Court erred in denying its motion for summary judgment on Count II on the basis that it failed to establish that there was no genuine issue of material fact is without merit.

judgment action because the right of recovery of attorney fees for an insured who successfully litigates a duty to defend is not absolute. We agree. Lawyers Title is obligated to pay legal fees incurred by the Yaffies in defending the Town's counterclaim against them in the underlying action claiming title in Cleaves Road, but Lawyers Title is not required to pay the legal fees incurred by the Yaffies in *this* action.

> When it is an insurer's *clear* duty to defend and the insurer wrongfully refuses to do so on the ground that the claim upon which the action against the insured is based is not within the coverage of the policy, the insurer is guilty of a breach of contract that renders it liable to pay such damages as will place the insured in a position equally as good as the insured would have occupied had the insurance contract been fully and properly performed from the beginning. The obligation on the insurer of fair dealing with its insured and the burden on the insured in the event of an insurer's failure to defend justify an award of attorney fees to an insured who successfully pursues an action for breach of contract *when the duty to defend is clear*, pursuant to prevailing Maine law, from the policy and the pleadings of the suit filed against the insured.

*Gibson v. Farm Family Mut. Ins. Co.*, 673 A.2d 1350, 1354–55 (Me.1996) (emphasis added). The determination of whether the duty to defend is clear is based on Maine law prevailing as of the date of the insured's request for the insured to defend them. *See id.* at 1355. The reformation count in the Yaffies' suit assumes there is no clear duty to defend pursuant to the terms of the policy, and the court in granting summary judgment to Lawyers Title on Count I, a judgment not challenged on appeal,[11] determined that the language of the policy imposed no such duty on Lawyers Title.[12] Because the duty to defend the Yaffies in the counterclaim in the underlying action was not clear from the

terms of the policy, attorney fees incurred by the Yaffies in bringing the declaratory judgment action against Lawyers Title are not the responsibility of Lawyers Title. To the extent that the court's order applies to legal fees other than those incurred by the Yaffies in the defense of the Town of New Gloucester's counterclaim for title to Cleaves Road in the underlying action, the order is in error and must be modified.

### III.

[¶ 12] Other contentions of Lawyers Title are without merit and do not require discussion.

The judgment is:

Judgment is modified to eliminate any obligation of Lawyers Title to pay attorney fees of plaintiffs in the within action, and, as modified, affirmed.

---

11. *See supra* note 5.

12. The Yaffies did not appeal the summary judgment in favor of Lawyers Title on Count I, in which the court concluded:

Exception 5 is not ambiguous and will not be construed contrary to its plain language. Based on Exception 5 as written, the defendant has no duty to defend a claim of title to that portion of the Yaffies' land that lies within the bounds of Cleaves Road.