STATE OF MAINE                                    SUPERIOR COURT
PENOBSCOT, SS.                                    Docket No. CV-99-259

┌─────────────────────────┐
│  FILED AND ENTERED      │
│  SUPERIOR COURT         │
│                         │
│     JUL 0 3 2001        │
│                         │
│  PENOBSCOT COUNTY       │
└─────────────────────────┘

Bangor-Brewer Bowling Lanes, Inc.,
        Plaintiff,


        v.                                  **ORDER ON MOTION TO**
                                            **DISMISS AND MOTIONS**
                                            **FOR SUMMARY JUDGMENT**


Commercial Union-York Ins. Co. et al.,
        Defendants


Pending before the court are defendant Commercial Union-York Insurance Company's ("CU's") motion to dismiss counts 7 and 8 .of the plaintiff's amended complaint, its motion for summary judgment on each count of the amended complaint, and defendant Varney Agency, Inc.'s ("Varney") motion for summary judgment on counts 7 and 8 of the amended complaint.[1]

This action arises out of issues of insurance coverage for losses that the plaintiff allegedly sustained as a result of the January 1998 ice storm. During that period of time, the plaintiff owned a commercial account insurance policy that had been issued by CU and sold to the plaintiff by Varney. The plaintiff claims that its loss falls within the scope of coverage

---

[1] As the plaintiff has framed its claims, counts 1-6 and 9-10 purport to seek relief against CU, and counts 7-8 seek relief against Varney. As is noted in this order *infra*, dismissal of counts 7 and 8 as against CU is proper because of the plaintiff's express direction of its claims.

1

provided under that policy. The plaintiff also asserts companion theories of coverage grounded principally on the law of contract, estoppel, negligence and reformation. Further, in its complaint, the plaintiff seeks relief for CU's treatment of its claim under the policy, based on statutes governing the adjustment and payment of claims made under insurance policies.

"A motion to dismiss tests the legal sufficiency of the complaint." *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994). On a motion to dismiss, the complaint must be examined "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* A dismissal is proper "only when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Hall v. Board of Environmental Protection*, 498 A.2d 260, 266 (Me. 1985). *See also Heber v. Lucerne-in-Maine Village Co.*, 2000 ME 137, ¶ 7, 755 A.2d 1064, 1066.

Summary judgment is proper only if the record on summary judgment shows that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *See* M.R.Civ.P. 56. To survive a motion for a summary judgment, the opposing party must produce evidence that, if produced at trial, would be sufficient to resist a motion for a judgment as a matter of law; "[t]he plaintiff must establish a *prima facie* case for each element of the cause of action." *Rodrigue v. Rodrigue*, 1997 ME 99, ¶8, 694 A.2d 924, 926. The court cannot decide an issue of fact even if the opposing party's chances of prevailing at trial on that issue are improbable. *Cottle Enterprises, Inc. v. Town of Farmington*,

1997 ME 78, ¶ 11, 693 A.2d 330, 334.

## Count 1 (account annexed)

The statutory predicate for count 1 is 14 M.R.S.A. § 51. However, the insured's rights in this statutory claim are determined on the basis of the insurance policy itself. *Oakes v. Franklin Fire Insurance Co.*, 122 Me. 361, 363-64 (1923). Therefore, CU's motion for summary judgment on count 1 is entirely a function of the analysis relevant to counts 2 and 3. Because the court denies CU's motion for summary judgment on counts 2 and 3, its motion for summary judgment on count 1 must be denied as well.

## Counts 2 and 3 (declaratory judgment and breach of contract)

The policy at issue is described as a "basic" commercial policy. CU Statement of Undisputed Material Fact ("CUSUMF") ¶ 55. Under this type of policy, coverage is provided for specific losses identified therein. *Id.* ¶ 56. In this way, a basic policy is distinguishable from an "all risk" policy (also described in the parties' submissions as a "special" form policy), because the latter provides coverage for all losses not specifically excluded by the policy's terms. *Id.* ¶ 58. The relevant coverage provision found in the plaintiff's basic policy creates coverage for

> **Windstorm or Hail**, but not including:
> a. frost or cold weather
> b. ice (other than hail), snow or sleet whether driven by wind or not; or
> c. loss or damage to the interior of any building or structure or the property inside the building or structure, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building or structure first sustained wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters.

*Id.* ¶ 57. The question presented here is whether the record on summary

judgment raises a factual issue of whether the loss claimed by the plaintiff falls within the basic grant of coverage ("windstorm or hail"); the exclusion to that grant of coverage noted in subsection (b); the exclusion to that grant of coverage noted in subsection (c) (". . .but not including . . . loss or damage to the interior of any building or structure or the property inside the building or structure, caused by rain, snow, sand or dust, whether driven by wind or not . . ."), or the exception to exclusion (c) (". . . unless the building or structure first sustained wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters.").

The record on summary judgment supports factual contentions that the ice storm was accompanied by heavy winds, *e.g.*, Plaintiff's Statement of Material Facts ("PSMF") ¶¶ 26, 30 and 31; that during the storm the roof dropped substantially, *id.* ¶ 23; that water entered the building through the roof, *id.*; and that the combination of wind and snow could cause deflection in the roof, CUSUMF ¶ 63. From this factual predicate, there exists an argument that the resulting loss is covered by the basic policy that the plaintiff owned.

CU also argues that the pre-existing condition of the roof affects the magnitude of any covered loss arising from the 1998 ice storm.[2] In 1969, another winter storm of considerable magnitude caused damage to the roof. CU contends that the amount of proceeds available under this policy must take into account the condition of the roof prior to the 1998 storm, because an insured is entitled to the "actual cash value as of the time of loss or damage. . .," PSMF ¶ 60, which the policy in turn defines as "the

---

[2]To the extent that the coverage issue is applicable to the claims against it, Varney joins in this argument.

replacement cost at the time of the loss, less the value of physical depreciation as to the damaged property." CUSUMF ¶ 61. For the reasons noted above, this record supports a factual argument that the plaintiff sustained a covered loss as a result of the 1998 storm. None of the parties has developed a factual record on this motion that allows a quantitative ruling, as a matter of law, regarding the extent of the prior physical depreciation. Thus, the court can indicate only that the measure of any covered loss is controlled by the portion of the policy noted herein.

Finally, CU argues that the plaintiff failed to satisfy conditions precedent to recovery under the policy and that its claim is therefore barred.[3] The policy requires an insured to promptly provide certain information about the nature of the loss. CU's rule 7(d) statement, however, indicates that "a property loss notice was completed." CUSUMF ¶ 21. Further, CU secured a property claims adjuster to inspect the building after the plaintiff reported the loss, and that investigation continued for several months. *Id.* ¶¶ 32, 34; *see also* PSMF ¶¶ 49-50, 55.

The second aspect of CU's argument is that the plaintiff did not submit loss-related information in a timely way. The record establishes that the plaintiff did not provide CU with a sworn proof of loss until October 1999. CUSUMF ¶ 53. This issue is whether this submission was timely. The parties' rule 7(d) statements do not appear to set out the provisions of the policy establishing the time requirements for such a submission to the carrier. The court thus cannot rule on CU's claim that the

---

[3] The plaintiff responds in part that CU had not previously raised this issue. However, CU's responsive pleading includes a specific affirmative defense that the plaintiff failed to submit a proper and timely proof of loss.

5

plaintiff failed to comply with that contractual requirement.

## Count 4 (estoppel)

In count 4 of the amended complaint, the plaintiff alleges that CU is estopped from denying coverage under the policy.[4] As factual support for this theory, the plaintiff alleges that from the time the plaintiff first reported the loss occasioned by the 1998 ice storm until late May 1998, CU advised the plaintiff that the loss was covered.[5]

"An insurer may be estopped from denying coverage when the party claiming coverage has demonstrated (1) unreasonable conduct of the insurer that misleads the insured concerning the scope of his coverage and (2) justifiable and detrimental reliance by the insured upon the insurer's conduct." *Maine Mutual Fire Ins. Co. v. Grant*, 674 A.2d 503, 504 (Me. 1996). The conduct at issue must have justifiably misled the claimant into believing that coverage would exist. *Id.* Here, the plaintiff's factual allegations supporting its estoppel claim are limited to the post-loss conduct of the insurer. Therefore, that alleged conduct cannot have misled the plaintiff into believing that it had coverage for the type of loss involved here at a time when any such reliance causally resulted in the

---

[4]The plaintiff notes in his written argument on this motion that this theory is an alternative to its claim that the loss is covered under the terms of the policy itself.

[5]This factual support is found in the allegations in the plaintiff's amended complaint. In its written argument opposing the motions at bar, the plaintiff relies on a completely distinct factual predicate: alleged representations by Varney (CU's statutory agent, *see* 24-A M.R.S.A. § 2422) made prior to the 1998 loss that the coverage provided under the policy would include the type of loss involved here. Much of the authority cited by the plaintiff would have relevance only to this new factual theory of liability. The court does not address this new factual theory because it was not pleaded and because a very different and specific factual claim was affirmatively set out in the amended complaint.

absence of such coverage. Because the record on summary judgment establishes the absence of any reliance that would estop CU from denying coverage, there is no need to consider the nature of the conduct attributed to CU. CU is therefore entitled to judgment on count 4.

## Counts 5 and 6 (late payment and unfair claims practices)

In count 5, the plaintiff alleges that CU violated the provisions of 24-A M.R.S.A. § 2436, by failing to dispute or pay the claim within 30 days after it received the plaintiff's proof of loss and ascertained that loss. Section 2436 also permits the insurer to make a written request for "reasonable additional information." *See Chiapetta v. Lumbermens Mutual Ins. Co.*, 583 A.2d 198, 200 (Me. 1990). The 30 day response period recommences upon receipt of that information.

The 30 day period under section 2436 is triggered when the carrier receives the "proof of loss." Because "section 2436 is penal in nature," it is construed strictly. *Marquis v. Farm Family Mutual Ins. Co.*, 628 A.2d 644, 651 (Me. 1993). The record on summary judgment establishes that the plaintiff "provided" CU with a "proof of loss" on approximately October 15, 1999. CUSUMF ¶ 53.[6] Because section 2436 is predicated on the submission of a "proof of loss," October 15, 1999, is the controlling date to determine the timeliness of CU's response. (The "property loss notice" mentioned in CU's rule 7(d) statement cannot be viewed as the same instrument, when section 2436 is construed strictly.)

In its rule 7(d) statement, CU asserts that it denied the claim on November 5, 1999. *Id.* ¶ 54. In response to this assertion, the plaintiff's

---

[6]In its responsive rule 7(d) statement, the plaintiff specifically disclaimed any dispute with that factual assertion.

rule 7(d) statement refers to events occurring prior to October 1999. *See* PSMF ¶¶ 68, 71 and 97. Because none of the events noted by the plaintiff occurred more than 30 days after the approximate date of October 15, 1999, the present record establishes the absence of any factual contention that CU violated section 2436. CU is entitled to summary judgment on count 5.

Then, in count 6, the plaintiff claims a violation of 24-A M.R.S.A. § 2436-A because of CU's alleged failure "to pay or deny that claim within a reasonable period of time following that notification" of the claim by the plaintiff. This could be seen to invoke either section 2436-A(1)(B) or section 2436-A(1)(D). In its motion, CU focuses only on the latter.

Section 2436-(A)(1)(D) requires a carrier to affirm or deny coverage "within a reasonable time after having completed its investigation related to a claim. . . ." Here, CU completed its investigation in May 1998. CUSUMF ¶ 34. (The plaintiff expressly does not challenge this assertion.) In late May or early June, the adjuster affiliated with CU advised the plaintiff's principal that the carrier "might deny coverage." *Id.* ¶ 45. By letter dated June 4, 1998, CU notified the plaintiff that in fact it denied coverage under the policy. *Id.* (Again, the plaintiff does not contest these assertions.) As a matter of law, the court cannot conclude -- and the plaintiff does not argue -- that the short delay between the completion of the investigation and the notification to the insured was an unreasonable delay. Thus, there is no factual basis on which the plaintiff may pursue a claim under section 2436-(A)(1)(D).

On the other hand, section 2436-A(1)(B) requires an examination of any delay between an insurer's receipt of a written notice of claim and the

insurer's ultimate action on that claim. Here, CU received a written notice of the plaintiff's claim. CUSUMF ¶ 23. That notice was prepared on February 4, 1998. *Id.* ¶ 21. The record does not establish the date when CU received the notice. One may reasonably infer that any delay after February 4 was not significant. As is noted above in connection with count 5 of the amended complaint, CU advised the plaintiff of its denial of coverage in early June.

The record establishes that during the interim, CU's adjuster investigated the claim. However, the reasonableness of the delay between early February and early June, particularly in light of CU's affirmative representations of coverage, *see* PSMF ¶¶ 47, 56, is a factual issue. Therefore, the motion for summary judgment on count 6 is denied to the extent that count 6 states a claim for relief under section 2436-A(1)(B).

**Count 7 and 8 (negligence and breach of contract)**

Counts 7 and 8 of the amended complaint do not purport to state a claim against CU. CU is therefore entitled to dismissal of count 7 and 8 as to it.

Those counts state liability claims against Varney. In count 7, the plaintiff alleges that Varney owed it (the plaintiff) a duty of care as the plaintiff's agent and that Varney negligently failed to obtain special form coverage for the plaintiff's bowling lane building. Count 8 sets out a claim that Varney committed a breach of a contract to provide the plaintiff with "adequate insurance coverage to meet Plaintiff's needs." Varney moves for summary judgment on both counts on a number of grounds.

In order to make out a case under either theory, the plaintiff would need to present some evidence to allow a finding that special form

coverage would have been available if Varney had fulfilled its alleged duty of care to the plaintiff or if Varney had not allegedly breached a contract to procure adequate insurance for the plaintiff. *See Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶¶ 13-14, 742 A.2d 933, 940 (in legal malpractice claim, in order to prove proximate causation, plaintiff must prove that proper legal representation would have resulted in more favorable outcome). Authority from other jurisdictions, cited by Varney, integrates this fundamental principle of tort and contract law into the circumstances at issue here. *See Bayly, Martin & Fay, Inc. v. Pete's Satire, Inc.* 739 P.2d 239, 244 (Co. 1987) ("We turn now to consider whether . . . [the claimants] satisfied their burden or proof on the availability of other insurance."); *American Motorist Ins. Co. v. Salvatore* 476 N.Y.S.2d 897, 900 (N.Y.Sup.Ct. 1984) (an insurance agent may be liable in tort or contract for failing to procure insurance; "in order to support a recovery, it must be demonstrated that coverage could have been procured prior to the occurrence of the insured event."); *State v. Warren Star Theater*, 616 N.E.2d 1192, 1196-97 (Ct.App.Oh. 1992). Indeed, the "majority rule" holds that the alleged insureds bear the burden of proving that coverage was available for the sustained loss. *Johnson & Higgins of Alaska, Inc. v. Blomfield*, 907 P.2d 1371, 1374 (Al. 1995). *See generally* Robin Cheryl Miller, Annotation, *Liability of Insurance Agent or Broker on Ground of Inadequacy of Liability-Insurance Coverage Procured*, 60 A.L.R.5th 165, § 5 (1998).[7]

---

[7]The plaintiff has not attempted to argue that the record on summary judgment supports a prima facie case that it could have obtained special form coverage. Indeed, in its written argument on this motion, the plaintiff contends that the defendant shoulders the burden of proving that coverage with appropriate terms could *not* have been procured. "Memorandum of Law in Opposition to Defendant

10

Here, if the record on summary judgment represented the trial record, a factfinder would be required to engage in speculation in order to conclude that the plaintiff could have obtained special form coverage for the bowling lane building. The record on summary judgment establishes that "'[s]pecial' form coverage was not available from Commercial Union because of the pre-existing condition" to the roof of the bowling lane building. Varney Statement of Material Fact ("VSMF") ¶ 20. The plaintiff expressly agreed with this assertion. *See also* CUSUMF ¶ 17 ("If Varney had requested special coverage from Commercial Union for the bowling lanes building, that request would have been denied.") (The plaintiff did not dispute this portion of CU's rule 7(d) statement.)

The parties' rule 7(d) statements also address the question of whether such coverage could have been procured from another insurer. *See* VSMS ¶ 21; PSMF ¶ 75-76. *See also* CUSUMF ¶ 19 ("In approximately 1995, Varney Agency attempted to obtain coverage on the bowling lanes building from other companies but were not able to obtain any quotes."). (The plaintiff did not dispute this portion of CU's rule 7(d) statement.) Review of those portions of the record to which the rule 7(d) statement refers reveals evidence that Varney's efforts to obtain premium cost information from other carriers were unsuccessful because "other companies declined to cover it [the bowling lanes building]." Deposition (September 20, 2000) of William Varney at 16. Regardless of the reasons for those declinations, the record still fails to show that the plaintiff could

---

Varney Agency, Inc's Motion for Summary Judgment" at 10. Because the plaintiff must prove causation, the *plaintiff* at bar must present evidence that it *could* have obtained special form coverage.

1 1

have obtained the coverage the it claims Varney should have provided.[8]

When "the factfinder would be compelled to speculate as to proximate causation, and at a trial . . . [The defendant] would be entitled to a judgment as a matter of law," then summary judgment must be entered against the claimant. *Corey*, 1999 ME 196, ¶ 14, 742 A.2d at 940. If presented with the present record, a factfinder would be deprived of a proper basis to conclude that the plaintiff had proven either of its claims against Varney. Varney is therefore entitled to summary judgment on counts 7 and 8.

The court need not and does not consider Varney's remaining arguments regarding counts 7 and 8.

**Count 9 (implied contract)**

The plaintiff has not offered any argument in opposition to CU's motion for summary judgment on this count. Accordingly, summary judgment will be granted for CU on count 9.

Further, on its merits, CU is entitled to summary judgment on this claim. Recovery against an insurer on a theory of implied contract is predicated on proof that, among other things, "it is *certain* that the insurer would have accepted the risk had it received a proper request." *Attleborough Mutual Ins. Co. v. Grange Mutual Ins. Co.*, 611 A.2d 76, 78 (Me. 1992) (emphasis in original). Here, as is noted above, the present record establishes that CU would not have accepted the risk associated

---

[8] In some circumstances, evidence that a particular form or level of coverage is "generally available" is sufficient proof of causation. *Bayly, Martin & Fay*, 739 P.2d at 244-45. The present record does not contain such evidence. In fact, that record demonstrates the contrary. In *Bayly, Martin & Fay*, the alleged insured proved this point with evidence that, prior to the loss, it had the type of coverage that it claimed was wrongfully denied at the time of the loss. Additionally, the claimant presented evidence that the coverage at issue was generally available. *Id.* at 245.

with special form coverage.

**Count 10 (reformation)**

In its final count, the plaintiff alleges that it and Varney both believed that the policy would provide "special" coverage and that, on this basis, the policy that CU actually issued (which provided more limited "basic" coverage) should be reformed to reflect that expectation.

An insurance policy is subject to equitable reformation if it fails to cover an interest or loss other that the parties intended to cover. *Yaffie v. Lawyers Title Ins. Corp.*, 1998 ME 77, ¶ 9 n.10, 710 A.2d 886, 889. Such a mistake, to be actionable, must be mutual, "common to both parties," and material. *Id.*, ¶ 8, 710 A.2d at 888.

Here, the record on summary judgment clearly shows that CU never understood that the policy it issued to the plaintiff provided special form coverage. Thus, the claim for reformation could not be pursued against CU based on CU's own intentions.

However, by operation of statute, Varney is deemed to be CU's agent for all matters relating to insurance and resulting coverage. 24-A M.R.S.A. § 2422; *County Forest Products, Inc. v. Green Mountain Agency, Inc.*, 2000 ME 161, ¶ 24, 758 A.2d 59, 65. While the record contains evidence that Varney knew that the plaintiff's coverage was limited to a basic policy and that Varney advised the plaintiff of that limitation, *see* CUSUMF ¶¶ 9, 11, the record also contains evidence that Varney representatives told the plaintiff's representatives that the scope of coverage was greater than what would be covered under a basic policy. *See* PSMF ¶¶ 17. This generates a factual question of Varney's understanding of the terms of the policy issued to the plaintiff. Even when the heightened burden of proof is

13

considered, *Yaffie*, 1998 ME 77, ¶ 8, 710 A.2d at 888 (basis for reformation must be established by clear and convincing evidence), the record does not preclude a genuine factual dispute to support the plaintiff's claim for reformation.

The entry shall be:

For the reasons set out in the order dated July 3, 2001, defendant Commercial Union's motion for summary judgment is granted in part and denied in part.  On its motion, summary judgment is granted for CU on counts 4 (estoppel), 5 (late payment) and 9 (implied contract).  CU's motion to dismiss is granted.  Counts 7 (negligence) and 8 (breach of contract) are dismissed as to CU.  In all other respects, CU's motion for summary judgment is denied.

Defendant Varney's motion for summary judgment is granted. Summary judgment is granted for Varney on all counts against Varney (namely, count 7 (negligence) and 8 (breach of contract)).

Dated: July 3, 2001

_____
Justice, Maine Superior Court
Jeffrey L. Hjelm

14

| Date Filed | 12/27/99 | PENOBSCOT | Docket No. | CV-99-259 |
|---|---|---|---|---|

County

Action __CONTRACT__

ASSIGNED TO JUSTICE HJELM

BANGOR-BREWER BOWLING LANES, INC.

vs.

COMMERCIAL UNION-YORK INS. CO. and
VARNEY AGENCY, INC.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| GILBERT LAW OFFICES<br>P O BOX 2339 - 82 Columbia Street<br>BANGOR ME 04402-2339<br>BY: Charles Gilbert, Esq. | Rudman & Winchell<br>84 Harlow Street - PO Box 1401<br>Bangor, Maine  04402-1401<br>BY: John McCarthy, Esq. FOR: Commercial<br>Union-York Ins. Co. |
| | RICHARDSON WHITMAN LARGE & BADGER<br>P O BOX 2429, BANGOR ME 04402-2429<br>BY: John B. Lucy, Esq.<br>FOR: Varney Agency, Inc. |

| Date of Entry | |
|---|---|
| 12/27/99 | Complaint filed - Exhibit A attached. |
| 12/28/99 | Case File Notice Postcard forwarded to Plaintiff's counsel. |
| 1/6/00 | Acceptance of Service on behalf of Defendant Commercial Union York Insurance Co. by John McCarthy, Esq. filed (s.d. 1/3/2000) |
| 1/10/00 | Defenses and Answer of Defendant Commercial Union York Insurance Company Filed. |
| 1/19/00 | Notification of Discovery Service filed by Plaintiff, First Request for Production of Documents to Defendant Varney Agency, Inc. |
| 1/21/00 | Notification of Discovery Service filed by Defendant Varney, Objections to Plaintiff's First Request for Production of Documents. |
| 1/21/00 | Answer of Defendant Varney Agency, Inc. filed. |
| 1/24/00 | Scheduling Order (M.R.Civ.P. 16(a)) filed.  The entry will be:  Scheduling Order filed. Discovery deadline is October 1, 2000.  (Hjelm, J) Copy forwarded to attorneys of record. |
| 1/28/00 | Notification of Discovery Service filed by Defendant Varney Agency, First Request for Production of Documents and First Set of Interrogatories to Plaintiff. |
| 1/31/00 | Acceptance of Service by John B. Lucy, Esq. on behalf of the Defendant Varney Agency, Inc. filed.  (s.d. 1/19/00) |
| 2/10/00 | Jury Trial fee of $300.00 paid by Plaintiff. |
| 3/3/00 | Notification of Discovery Service Filed by Plaintiff; Plaintiff's First Request for Production of Documents Propounded to Defendant Commercial Union-York Ins. Co.;  Interrogatories Propounded by Plaintiff to Defendant Commercial Union-York Ins. Co. |