PA - John C Walker
DA - Jeffrey Edwards

STATE OF MAINE
AROOSTOOK, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-01-053
EAH - ARO - 1/15/2004

STEPHEN CHAPMAN and )
CONSTANCE CHAPMAN )
        Plaintiffs )
)
)
)
v. )   **ORDER ON MOTION FOR**
)   **SUMMARY JUDGMENT**
)
)
)   DONALD L. GARRECHT
METROPOLITAN CASUALTY )   LAW LIBRARY
INSURANCE COMPANY )

FEB 6 2004

Pending before the court is the Defendant's Motion for Summary Judgment.[1] For the reasons set forth herein, the court grants this motion in part and denies it in part.

## BACKGROUND

This case arises out of a motor vehicle accident in which the Plaintiff Constance Chapman was seriously injured. Both Mrs. Chapman and the other driver involved in the accident had $50,000 of liability insurance, the minimum required under Maine law. Mrs. Chapman's policy also provided for only $50,000 of uninsured/underinsured coverage. Only Mrs. Chapman suffered personal injuries in the accident, but she and her husband Stephen Chapman both settled claims with the other driver's insurance carrier. They received $25,000 each. Plaintiffs now complain against the Defendant because it refuses to pay them anything under the uninsured/underinsured provisions of their own policy. Plaintiffs have brought a lawsuit containing five counts against the Defendant.

---

[1] The Plaintiff has also filed a pleading captioned, "Plaintiff's Objection To Defendant's Motion For Summary Judgment and Plaintiff's Cross Motion For Summary Judgment Pursuant to M.R.C.P. Rule 56. As indicated herein, the court denies the Plaintiffs' motion.

Count I of this lawsuit contains a preliminary recitation of the alleged facts upon which the Plaintiffs' base their claims; it does not set forth any particular claim nor make any specific request for relief

Count II of the Plaintiffs' complaint is not an exemplar of model pleading. It alleges a "breach of contract" but does not clearly explain what the claimed breach pertains to. A liberal reading of the complaint suggests to the court that the Plaintiffs are complaining that the Defendant's agent, David Young, made certain representations to them regarding their insurance coverage that ultimately caused them to suffer pecuniary loss. This is a claim that sounds in tort not contract. The Plaintiffs allege a "special relationship" between the Plaintiffs and the Defendant and appear to contend that this created a duty in the Defendant to advise the Plaintiffs to increase their uninsured/underinsured coverage. Read in conjunction with the allegations of paragraph 6 of Count I, Count II could also be read to allege a claim of negligent misrepresentation.

Count III alleges that the Defendant was negligent in failing to explain to the Plaintiffs that they should have a more uninsured/underinsured coverage.

Count IV alleges a violation of the Unfair Trade Practices Act premised on the contention that the Defendant unfairly and deceptively sold them an insurance policy that only had $50,000 of uninsured/underinsured coverage and was therefore virtually worthless. The Plaintiffs complain that because all Maine drivers are required to have at least $50,000 of uninsured/underinsured insurance coverage anyway, they paid a premium for insurance coverage that will most likely never benefit them because it is highly unlikely they would ever encounter another driver with coverage less than their own.

2

## DISCUSSION

### I. Insufficiency of Service of Process.

In addition to claiming that it is entitled to summary judgment as a matter of law on the merits of the Plaintiffs' claims, the Defendant contends that the Plaintiffs' lawsuit should be dismissed in its entirety because the Plaintiffs never served upon it a copy of the complaint and summons. The Plaintiff does not dispute that it made service of process upon the wrong insurance company when it served Metropolitan *Life Insurance* Company and not Metropolitan *Casualty Insurance* Company. While this constitutes insufficient service of process under M.R.Civ.P 12(b)(4), it appears that Metropolitan Casualty Insurance Company nonetheless received actual notice of this lawsuit as it has appeared and defended it from the outset. Because actual notice is the ultimate goal of service of process and because it appears that this objective has been satisfactorily achieved, the court declines to dismiss this lawsuit on the basis of insufficiency of process.

### II. Motion for Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact, and the facts entitle a party to judgment as a matter of law. M.R. Civ. P. 56 (c); In Re Estate of Davis, 2001 ME 106, ¶7, 775 A.2d 1127, 1129. The Court should grant a defendant's motion for summary judgment if the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law. Curtis v. Porter, 2001 ME 158, ¶7, 784 A.2d 18,21. A fact is material when it has the potential to affect the outcome of the suit. Kenny v. Dep't of Human Services, 1999 ME 158, ¶3, 740 A.2d 560,

562. An issue is genuine if sufficient evidence supporting the claimed factual dispute exists to require a choice between the parties' differing versions of the truth at trial. *Id.*

Both the trial court and the appellate court undertake the same analysis of motions for summary judgment. The court first determines the elements of the cause of action at issue and then reviews the facts set forth in the parties' statements of material facts that are supported by appropriate record references. *Curtis* at ¶8.

Plaintiff's claims as set forth in Counts II and III are based on a claimed breach of duty owed them by the Defendant. Maine law is clear that,

> An insurance agent generally assumes only those duties found in an ordinary agency relationship, that is, to use reasonable care, diligence and judgment in obtaining the insurance coverage requested by the insured party. An insurance agent does not have a duty to advise an insured about adequacy of coverage merely because an agency relationship exists between the parties. Before such a duty can arise, a special agency relationship must exist between the parties. Szelenyi v. Morse Payson & Noyes Insurance. 594 A.2d 1092, (Me. 1991)

Thus, in order to prevail on this claim, the Plaintiffs would need to establish first that "a special relationship" existed between themselves and the Defendant. If they could establish the existence of this relationship, then the Plaintiffs would also have to demonstrate that the Defendant's agent was negligent and that this negligence was a proximate cause of harm to them.

The Defendant challenges the Plaintiffs' claims on the basis that no such "special relationship" existed between the parties. In order to survive a Defendant's motion for summary judgment, the Plaintiff must establish a prima facie case demonstrating the existence of a "special relationship" as well as each of the other elements of this cause of action. Mastriano v. Blyer, 2001 ME 134, ¶11, 779 A.2d 951,954. Where a plaintiff will have the burden of proof on an essential issue at trial and it is clear that the defendant

4

would be entitled to a judgment as a matter of law at trial if the plaintiff presented nothing more than was before the court at the hearing on the motion for summary judgment, the court may properly grant a defendant's motion for summary judgment. Champagne v. Mid-Maine Medical Center, 1998 ME 87, ¶9, 711A.2d 842,845.

The Defendant contends that there was no such relationship and points to a number of circumstances over the course of the long business relationship between the Plaintiff and Defendant to support this position. The Plaintiffs counter that they did have a "special relationship" and appear to argue that it arose out of the single meeting between themselves and David Young at their home. The Plaintiffs maintain that it was during this meeting that the parties discussed insurance coverage and that David Young addressed the adequacy of their coverage by opining that they had "good coverage". The Defendant does not agree with the Plaintiffs' description of this meeting and insists that during this meeting, there was no discussion of insurance coverage at all. In deciding motions for summary judgment, courts consider, along with facts the parties establish, any reasonable inferences that a fact-finder could draw from the facts. Curtis v. Porter, 2001 ME 158, ¶9, 784 A.2d 18. Courts accord the nonmoving party "the full benefit of all favorable inferences that may be drawn." Id. If the parties dispute genuine material facts, they must resolve the matter through fact-finding, even if the nonmoving party's likelihood of success is small. Curtis at ¶7.

The court concludes that on the basis of the evidence presented in connection with the pending motion, there is the possibility that if the jury were to accept the Plaintiffs' version of the facts, the jury could find that by going to the Plaintiffs' home and by attempting to answer their insurance questions regarding uninsured/underinsured

5

coverage, that David Young either created a "special relationship" or negligently gave advice to the Plaintiffs.

It occurs to the court, however, that if one credits the Plaintiffs' account of their meeting with David Young, what the Plaintiffs have really described is a claim for negligent misrepresentation. Under Maine law, one who in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. Rand v. Bath Iron Works Corporation, 2003 ME 122, ¶13, 832 A.2d 771, 774 citing section 552(a)(1) of the Restatement (Second) of Torts (1977). It is not for the court to decide how strong a case the Plaintiffs' have or how likely it is that a jury would accept their version of events,

However, the questions of whether there was or was not a "special relationship" and what was said between the parties when David Young went to the Plaintiffs home are fact intensive inquiries and this court ultimately must conclude that these questions are for the jury to decide, The court therefore denies the Motion for Summary Judgment with regard to Counts II and III.[2]

---

[2] The court denies the Defendant's Motion to Strike the Affidavit of Constance Chapman. Although one reading of her deposition puts it in conflict with her affidavit, it is also possible that one could interpret her statements to be limited to the specific deposition exhibits that were in front of her at the time the questions were posed. Under such a scenario, one might conclude that she is stating only that no one had ever specifically reviewed with her either Exh. #1 (the declarations page) or Exh. #2 (the uninsured/underinsured endorsement page). This interpretation of her testimony is not inconsistent with her affidavit that asserts that she discussed uninsured/underinsured coverage with David Young at the time of his visit to her home. Accordingly, the court has considered her affidavit in connection with this ruling.

The Defendant also seeks summary judgment on Count IV regarding the Plaintiff's claim that it has engaged in an unfair trade practice prohibited by 5 M.R.S.A. § 205-A et seq. The Law Court has stated that,

> Whether an act or practice is unfair or deceptive for purposes of section 207 of the UTPA cannot be defined precisely and must be determined by the fact finder on a case-by-case basis. <u>Binette v. Dyer Library Ass'n</u>, 688 A.2d 898 ¶17,18. (Me. 1996)

Resolution of the Plaintiffs' claim in Count IV, must await jury determination and therefore, the Defendant's Motion for Summary Judgment on this count is denied.

## III. Defendant's Other Grounds.

The Defendant also raises issues pertaining to whether the Plaintiffs would be entitled to reform the insurance contract to increase the coverage to $100,000; whether the Defendant should be estopped from denying coverage; whether the Defendant is entitled to a set off against worker's compensation payments made to the Plaintiff Constance Chapman; whether the Plaintiff has exhausted the at fault driver's liability insurance as a precondition to any claim under its policy; whether Stephen Chapman has any standing to bring an uninsured/underinsured claim.

### A. Reformation.

The court concludes that the Defendant is entitled to summary judgment on Plaintiffs' claim to a reformation the insurance contract. Although the Plaintiffs fail to set forth the particulars of their legal theory that would entitle them to reformation, the court presumes that the claim is based on Maine law that allows reformation in circumstances of mutual mistake. <u>Yaffie v. Lawyer's Title Ins. Corp.</u> 1998 ME 77, ¶8, 710 A.2d 886,888 (Me 1998). The Law Court has stated "the party seeking reformation must prove

the existence of mutual mistake by clear and convincing evidence. A mutual mistake is one reciprocal and common to both parties, where each alike labors under the misconception in respect to the terms of the written instrument." Id. The mistake must be material to the transaction. Id. Although Plaintiffs ask for reformation relief there is no evidence of any mistake of fact, mutual or otherwise, in the materials presently before the court and accordingly the court concludes that there is no issue of material fact regarding this issue. The court grants summary judgment to the Defendant on this issue.

**B. Equitable Estoppel.**

The court also denies summary judgment in favor of the Defendant on the issue of equitable estoppel. To prove entitlement to assert equitable estoppel in an insurance contract, an insured must prove two elements: (1) unreasonable conduct by the insurer which misleads the insured concerning the scope of coverage and (2) justifiable reliance by the insured upon the conduct of the insurer. County Forest Products Inc. v. Green Mountain Agency, Inc. et al, 2001 ME 161, ¶ 26, 758 A.2d 59,66. The determinative factual circumstance pertaining to this question is also the meeting between David Young and the Plaintiffs. What happened at that meeting; i.e. what was said and by whom is a factual determination that remains in dispute. Although a close call, looking at the evidence in the light most favorable to the Plaintiffs and indulging every favorable, rational inference, this claim narrowly survives summary judgment.

**C. Exhaustion of Other Liability Insurance.**

The Defendant also contends that the Plaintiffs may not recover under its uninsured/underinsured policy provisions because they have not exhausted all available

liability policy limits.[3] The Defendant bases this contention upon the fact that Constance Chapman received $25,000 under the at fault driver's $50,000 policy leaving an additional $25,000 of coverage. The Defendant acknowledges that Plaintiff Stephen Chapman also received $25,000 but argues that this sum should not be included in the determination of whether the at fault driver's $50,000 of liability insurance has been exhausted because the payment to Stephen Chapman would not have been for "bodily injury" because he was not even in the car at the time of the accident and was not physically injured in any way.

The court concludes that the question of whether the Plaintiffs' two settlements exhausted the at fault driver's $50,000 policy limit depends upon the language of that policy and not upon the language of the Defendant's policy. It's possible that the other driver's policy contains language that makes Stephen Chapman's claim a derivative claim and therefore brings it within the $50,000 "per person" liability limit thereby exhausting the liability coverage. (See, e.g. Gilchrest v. Brown, 532 A.2d 692 (Me 1987). It's also possible that the policy contains broader language that would enable Stephen Chapman to assert his own claim independently of his inured spouse's claim and thereby access the larger $100,000 "per accident" limit. (See, e.g. Cunningham et al. v. Concord General Mutual Ins. Co. (1995 Me. LEXIS 267, Decided Dec. 5, 1995). The language of the at fault driver's policy has to supply this answer. The parties have not supplied a copy of that policy and therefore the court cannot determine if Stephen Chapman's claim was a "derivative claim"(in which case the at fault driver's $50,000 maximum liability would

---

[3] The Defendant's policy provides:
> No payment will be made under the Protection Against Underinsured Motorist coverage until all applicable bodily injury liability bonds, insurance polices, and any other insurance related sources have been exhausted by payment of judgments or settlements.

be exhausted) or not under the language of that policy. The court can't address this question without that policy. The court dismisses this aspect of the Defendant's motion for summary judgment without determination.

### D. Stephen Chapman's Standing.

The court denies the Defendant's Motion for Summary Judgment on the question of whether Stephen Chapman has standing to bring the pending complaint. "While standing is an amorphous concept fraught with a plurality of meanings, its basic purpose and requirements are clear. A party must assert a personal stake in the outcome of the litigation and present a real and substantial controversy touching on the legal relations of parties with adverse legal interests." Franklin Property Trust v. Foresite, Inc., 438 A.2d 218, 221 (Me. 1981) (citations omitted). The nature and extent of any damages suffered by Stephen Chapman as the result of his wife's personal injuries involve factual determinations that a jury must make. Additionally whether or not he can prove entitlement to any compensation for violations of the UTPA also involve factual determinations.

### E. Worker's Compensation Setoff.

The Defendant's final basis for seeking summary judgment is that it is entitled to a worker's compensation set off. The court agrees with the Defendant's interpretation of the plain meaning of its policy language and its contention that it is entitled to reduce any payments made under the uninsured/underinsured provisions of its policy by the amount of worker's compensation benefits paid to the Plaintiff Constance Chapman.[4] The court

---

[4] Section IV of the Defendant's policy provides in relevant part:
REDUCTIONS
Any amount payable to any person under this section will be reduced by any amount that person:
(b) is paid or will be paid under a workers' compensation or similar law.

acknowledges that the Plaintiffs' position is not completely without merit. However, the force of their public policy argument is greatly diminished by the fact that Maine's Superintendent of Insurance has approved sale to the public of the very policy involved in this case. The language of the policy is clear and unambiguous and therefore it would appear that the state's top insurance official has endorsed the concept of reducing uninsured/underinsured benefits if a person also receives worker's compensation benefits.

This conclusion however, does not dictate granting the Defendant's motion. Some of Plaintiffs' claims sound in negligence and therefore may entitle one or both Plaintiffs to general compensatory damages outside of the uninsured/underinsured provisions of the Defendant's insurance policy. Additionally, Stephen Chapman has no worker's compensation claim at all to create any offset. While the $50,000 amount of the underinsured coverage at issue in this case is certainly one measure of damage, it is not the exclusive measure. Theoretically, the Plaintiffs' recovery could include damages for mental distress occasioned by the Defendant's negligence. The court cannot speculate on how likely such an outcome might be, but in the court's view it cannot be entirely ruled out. Accordingly, whether the Defendant is entitled to any offset for Constance Chapman's worker's compensation payments will have to await the jury's verdict on what compensation, if any, either or both of the Plaintiffs are entitled to and upon what claims. Accordingly, although the court agrees with the Defendant's interpretation of the law regarding setoff, its motion for summary judgment is denied.

**IV. Plaintiffs' Motion for Summary Judgment.**

The Plaintiffs have filed a pleading captioned, "Plaintiffs' Objection to Defendant's Motion For Summary Judgment And Plaintiffs' Cross Motion For Summary

Judgment Pursuant to M.R.C.P. 56. In the first paragraph of this pleading the Plaintiffs recite, "there are many genuine issues of material fact." In the second paragraph, the Plaintiffs recite, "there is no genuine issue as to any material fact". The court doesn't understand how both statements could be true. Plaintiffs' Memorandum of Law offers no argument in support of its own motion. The court denies the Plaintiffs' Motion for Summary Judgment.

## V. Plaintiffs' Motion to Amend.

Finally, the Plaintiff has filed a Motion to Amend Pleadings. This motion was filed after the Defendant filed its Motion for Summary Judgment and long after the end of discovery in this case. Noting the age of this case, the court concludes that it's time to go to trial. The court denies the Plaintiffs' motion to amend.

The entries shall be: The Defendant's Motion for Summary Judgment is granted in part and denied in part. The Defendant's Motion to Strike Affidavit is denied. The Plaintiffs' Motion For Summary Judgment is denied. The Plaintiffs' Motion to Amend Pleadings is denied.

Date: January 15, 2004

JUSTICE SUPERIOR COURT

12